Argued and submitted May 3, reversed and remanded with instructions
August 7, petition for review denied December 17, 2002 (335 Or 114)

## Michael F. HUNNELL
## and Beverly Hunnell,
*Appellants,*

*v.*

## ROSEBURG RESOURCES CO.,
*Respondent.*

## 00 CV 0693 CC; A114411

51 P3d 680

Eldon F. Caley argued the cause for appellants. With him on the briefs was Eldon F. Caley, Lawyer, P.C. II.

Steve C. Baldwin argued the cause for respondent. With him on the brief was Watkinson Laird Rubenstein Lashway & Baldwin, P.C.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Plaintiffs sought various forms of equitable relief—a declaratory judgment, an injunction, a judgment quieting title—to prevent defendant from using a road that connected defendant's property to Interstate 5 by passing across plaintiffs' property. Defendant responded that it lawfully used the road under an easement granted to defendant's predecessor-in-interest by plaintiffs' predecessor-in-interest. The sole issue on appeal is whether the trial court erred in interpreting the easement to permit defendant to continue using the road. We reverse and remand.

The following facts are undisputed. On September 11, 1946, plaintiffs' predecessors in interest sold an easement over their land to Fir Manufacturing Company (Fir). The relevant language from the easement provides:

"KNOW ALL MEN BY THESE PRESENTS That EARL W DAVIS and MADGE G DAVIS, husband and wife, * * * for and in consideration of the sum of Three Thousand Dollars ($3,000) in hand paid by FIR MANUFACTURING CO., an Oregon corporation, to them, have granted, bargained, sold and conveyed and by these presents hereby do grant, bargain, sell and convey unto said Fir Manufacturing Co., its successors and assigns, an exclusive easement for logging and lumber road purposes over and across the following described real property, subject to the terms and conditions hereinafter mentioned, to-wit:

"[Description of easement]

"TO HAVE AND TO HOLD the same unto the said Fir Manufacturing Co., its successors and assigns, for and during such period of time as said Fir Manufacturing Co., shall have ownership of any interest in or control over any timber [or] timberlands from which it is necessary or convenient to haul logs, lumber or other timber products over, along and across said property and easement."

Significantly, the words "its successors and assigns" do not appear in line three of the last paragraph above between the words "Fir Manufacturing Co." and "shall." What does appear is a small, superscript handwritten numeral "1" in a circle, as though to signal a footnote, but no corresponding

circled "1" appears with footnote text anywhere in the document.

In January 1951, another easement was granted to Fir, identical to the 1946 easement except for a minor change correcting an error in the description of the property. The purpose of the 1951 easement was only to correct that mistake; the new easement stated explicitly, "Grantor and Fir do hereby confirm that certain grant of easement as recorded" in 1946.

In 1952, Fir dissolved and no other corporate entity succeeded to its corporate rights and burdens. Thus, no corporate successor to Fir exists. Ultimately, however, defendant acquired at least a portion of the land previously owned by Fir and used the access road for logging purposes.[1] Then, in January 2000, shortly before this action began, plaintiffs discovered that defendant was charging third parties for the use of the logging road easement. Plaintiffs notified defendant that "the easement legally ended when Fir Manufacturing went out of business" and revoked defendant's permission to use the road. Defendant responded that, under its reading, the easement did not end when Fir dissolved; it was, in fact, appurtenant to the land and still validly in existence for the benefit of the land once owned by Fir and now owned by defendant.

This action followed. After a brief trial, the court issued a letter opinion concluding that the circled "1" in the recorded easement marked the spot where the parties intended to include the words "its successors and assigns," so that the phrase describing the term of the easement should be read, "for and during such period of time as said Fir Manufacturing Co., *its successors and assigns,* shall have ownership[.]" (Emphasis added.) The court also held that the inserted word "successors" meant not only "corporate successors" but all successors, including defendant. Consequently, the court entered judgment declaring that the easement was

---

[1] Neither party produced documents of title or other evidence proving that lands originally held by Fir are now part of defendant's land. The trial court nonetheless concluded, and neither party disputes, that "the pleadings, evidence, and memoranda filed by both parties provide a reasonable basis to believe that Defendant currently owns lands that formerly belonged to Fir Manufacturing."

appurtenant to defendant's land and that defendant could not use the road for purposes not spelled out in the grant. A dispute over which party prevailed, resolved in favor of defendant, clarified that the judgment tacitly concluded that defendant *could* avail itself of the easement for purposes that *were* specified in the document, *i.e.*, that the easement did not end with the dissolution of Fir, as plaintiff contended. Plaintiff appeals, assigning error to that conclusion.

We review the interpretation of an express easement for errors of law. *State Highway Com'n v. Deal et al.*, 191 Or 661, 681, 233 P2d 242 (1951); *Kell v. Oppenlander*, 154 Or App 422, 426, 961 P2d 861 (1998). To interpret an easement, we follow the guidelines that the Supreme Court established in *Tipperman v. Tsiatsos*, 327 Or 539, 544-45, 964 P2d 1015 (1998). *See also Olson v. Van Horn*, 182 Or App 264, 270 n 4, 48 P3d 860 (2002) (adhering to *Tipperman* method). We begin with the text of the instrument itself and look beyond it if it is ambiguous, in which case we look to the intent of the original parties as revealed by the relevant surrounding circumstances such as the nature of the easement and how it was used. If ambiguity still remains, we look to rules of construction such as the one announcing that an easement is to be construed against the grantor who reserves it. *Tipperman*, 327 Or at 545. Applying those guidelines here, we conclude that the trial court erred.

The language specifying the duration of the easement provides that Fir and its successors and assigns own the easement

> "for and during such period of time as said Fir Manufacturing Co., shall have ownership of any interest in or control over any timber [or] timberlands from which it is necessary or convenient to haul logs, lumber or other timber products over, along and across said property and easement."

Those words can have only one meaning: the term of the easement ends when Fir no longer owns or controls any timber or property from which it is "necessary or convenient" to haul logs across grantor's property. Fir's successor could own the easement if Fir itself sold part of the land or timber but retained part as well, but once Fir owns none of the timber or

timberland, the easement ends. Fir no longer owns such timber or property because, since 1952, Fir no longer exists.

To reach a contrary conclusion, the trial court reasoned:

> "A careful reading of the entire document strongly supports the view that the scrivener of the document inadvertently failed to include the phrase 'successors and assigns' after 'Co.,' in the above paragraph. The comma after 'Co.' is unnecessary, and every other reference to 'Fir Manufacturing Co.' in the document is followed by the phrase 'and its successors and assigns.' Therefore, the court concludes that the original parties to the easement intended for the easements to continue so long as Fir Manufacturing, and its successors and assigns, controlled timberlands 'from which it is necessary or convenient' to haul logs and other timber products across the property of the grantor."

There are several problems with that reasoning. Although the comma after "Co." is unnecessary under today's accepted best punctuation practices, many people would insert one anyway in order to emphasize that the period after "Co." does not signal the end of a sentence. In any event, a punctuation error cannot possibly convey a particular meaning such as "its successors and assigns." And the fact that in other places the instrument uses the phrase "its successors and assigns" to modify "Fir Manufacturing Co." cuts equally in opposite directions; it might indicate an omission, but it might also indicate that the drafter knew how to include the phrase when he wanted to. The circled numeral "1" could, perhaps, indicate that the scrivener intended at some point to insert a phrase, but that is only one of numerous possibilities and is not particularly likely.

Furthermore, if defendant's and the trial court's reading were correct, the easement would be permanent; it would remain in existence for as long as anybody owned the property that Fir owned in 1946 and 1951, and property always has some owner. Yet at several other places, the instrument clearly states that it is *not* permanent. It refers to the easement as having a "term," twice using the phrase "during said term" and once each "during the term above mentioned" and "during the above mentioned term."

Thus, the actual words themselves are unambiguous, and neither the punctuation, the handwritten numeral, nor the context of the disputed phrase alters that fact. And if they did, the ambiguity would attach not to the meaning of the instrument but to whether that meaning reflected the intention of the parties. As the trial court recognized, these factors do not affect the language in such a way as to produce more than one meaning. Rather, they indicate (if anything) an inadvertent scrivener's omission. Reinserting inadvertent omissions is not the office of the judge in interpreting instruments; that office is "to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted[.]" ORS 42.230. An unambiguous contract that mistakenly fails to reflect the intent of the parties through inadvertent omission is remedied through a claim for reformation—a claim that defendant did not raise and that would have required defendant to prove, by clear and convincing evidence, an antecedent agreement to which the contract could be reformed, a mutual mistake (or unilateral mistake on the part of the defendant and inequitable conduct on the part of plaintiffs), and the absence of gross negligence by defendant. *See Jensen v. Miller*, 280 Or 225, 228-29, 570 P2d 375 (1977).

The trial court's interpretation of the instrument was error. That instrument created an easement for a limited term; the easement ended when Fir no longer owned or controlled the timber or timberland and did not pass to successors or assigns. It therefore did not pass to defendant.

Reversed and remanded with instructions to enter judgment declaring easement over plaintiffs' property terminated, enjoining defendant from further use thereof, and removing any cloud on plaintiffs' title resulting from easement.