Argued and submitted July 23, judgment reversed as to plaintiff Lin L. Craft; otherwise affirmed December 10, 2008, petition for review denied March 26, 2009 (346 Or 115)

Stefan D. BLOOMFIELD;
Molly M. Bloomfield;
Ruth H. Bloomfield and Richard Andrew Bloomfield,
trustees of the
William H. and Ruth H. Bloomfield Trust U/A
dated July 9, 1980;
Milosh Popovich,
trustee of the Milosh Popovich Trust
dated January 29, 1991;
J. Michael Schwab; Steven W. Brookshire;
Robert M. Cortwright; Joseph S. Cortwright;
Cascadia Investment Co., LLC,
an Oregon limited liability company;
Lin L. Craft,
trustee of the Lin L. Craft Trust
dated December 23, 1998;
Bruce G. Blain; Patricia A. Blain; Janet Yarbrough;
Dokay, LLC,
an Oregon limited liability company;
Dennis L. Pike and Kathryn L. Pike,
as trustees of the
Dennis and Kathryn Pike Family Trust
dated April 5, 1999;
Marilyn J. Thompson; Gary J. Jones;
Sarah D. Wright; John Buchner;
Kathleen L. Buchner, fka Kathleen L. Weswig;
Robert Dean Jones and Hilda M. Jones,
as trustees of the Hilda M. Jones Trust;
and Bloomfield Associates,
a California limited partnership,
*Plaintiffs-Respondents,*
*and*
Sarah K. CHARTZ
and Brian D. Tooley,
*Plaintiffs,*
*v.*
Jean Marie WEAKLAND,
*Defendant-Appellant.*

Sarah K. CHARTZ
and Brian D. Tooley,
*Plaintiffs-Respondents,*

*v.*

Jean Marie WEAKLAND,
*Defendant-Appellant.*

Lincoln County Circuit Court
003497, 003480; A134685

199 P3d 318

435-a

George W. Kelly argued the cause and filed the briefs for appellant.

Thomas L. Gallagher, Jr., argued the cause and filed the brief for respondents.

Before Schuman, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

CARSON, S. J.

## CARSON, S. J.

This is the fourth time that we are asked to consider issues arising out of a dispute among these same parties about the existence of an easement over defendant's ocean-front property in Lincoln County. In our most recent decision, we reversed and remanded a judgment of the trial court granting plaintiffs' motion for summary judgment on their claims for an implied easement for beach access over a path on defendant's property and an injunction preventing defendant from blocking plaintiffs' use of the easement. *Bloomfield v. Weakland*, 193 Or App 784, 92 P3d 749 (2004), *aff'd*, 339 Or 504, 123 P3d 275 (2005) (*Bloomfield I*).[1]

This appeal is from a judgment of the trial court on remand determining that plaintiffs have an express easement over defendant's property for beach access and enjoining defendant from barring their access. Among the rulings challenged on appeal are the trial court's decision to enjoin defendant from preventing plaintiffs' use of the easement and its rejection of defendant's *bona fide* purchaser defense. We review those rulings *de novo*. *Phair v. Walker, Coe*, 277 Or 141, 145, 559 P2d 882 (1977); *D'Abbracci v. Shaw-Bastian*, 201 Or App 108, 117, 117 P3d 1032 (2005) (claim for injunctive relief for interference with easement rights is equitable in nature and reviewed *de novo*). However, central to the dispute is the effect of a notation on a 1957 plat showing a "Private Walk Way" over defendant's property from a public street to the beach. The trial court determined that the notation created an express easement. That is a legal determination that we review for errors of law. *Hunnell v. Roseburg Resources Co.*, 183 Or App 228, 232, 51 P3d 680, *rev den*, 335 Or 114 (2002); *Watson v. Banducci*, 158 Or App 223, 230, 973 P2d 395 (1999) (construction of scope of easement is a question of law).

---

[1] Two of the appeals, *Craft v. Weakland*, 145 Or App 482, 928 P2d 366 (1996) (*Craft I*), and *Craft v. Weakland*, 174 Or App 185, 23 P3d 413 (2001) (*Craft II*), involved easement claims against defendant herein by Lin L. Craft for Lots 5 and 6 of the subdivision. In this case, Lin L. Craft is a plaintiff in her capacity as trustee of the Lin L. Craft Trust, which owns Lots 17, 18, and 25. In this opinion, we refer to her simply as "Craft."

The facts are set out in detail in our most recent decision in this case. *Bloomfield I*, 193 Or App at 787-90. We set them forth here again as necessary to resolve the issues raised on this appeal. As plaintiffs properly remind us, because the last appeal was from rulings on summary judgment, in stating the facts in *Bloomfield I*, we viewed the evidence in the light most favorable to defendant, the nonmoving party. Now, as previously noted, our review is *de novo*. We note, additionally, however, that this appeal returns to us on a somewhat different substantive footing. Initially, plaintiffs sought a declaration that they had an implied easement; on remand, the trial court allowed plaintiffs to amend their complaint to conform to its ruling that plaintiffs had established an *express* easement. One of the issues that we will address in this opinion is whether the trial court abused its discretion in allowing plaintiffs to amend the complaint after trial to include that claim.

Plaintiffs and defendant are owners of lots in a subdivision, Sea Woods Park. Seven of the lots, including Lot 14, are ocean-front lots. A 14-foot cliff separates the subdivision from the beach. All the deeds to the subdivision lots share a common chain of title, from Charles LaBarre, who purchased the property in 1935, and the LaBarre heirs,[2] who inherited the property from him in 1954. Until roads into the property were developed, family members would reach the property from the beach by climbing a ladder and using a path in substantially the same location as the Private Walk Way.

The heirs partitioned the property in 1955, and, on February 5, 1957, they recorded a plat for the subdivision, filed in Book 9, Page 7, Plat Records of Lincoln County. The plat depicts the dimensions of the individual lots and the widths of the streets in the Sea Woods Park subdivision. The plat also depicts the location of a Private Walk Way, 10 feet in width, running from the southwesterly corner of Lot 14 as it joins the street known as Sea Woods Terrace, along the southwesterly line of Lot 14 to the westerly border of the plat.

---

[2] The LaBarre heirs, Corinne LaBarre, Gwen LaBarre Craft, Julia LaBarre Pike, and Cosgrove LaBarre, are now deceased. However, the testimony of Corinne LaBarre was perpetuated through deposition in 2000, and William Pike, the husband of Julia LaBarre Pike, testified in the trial of *Craft I* in 1995.

The Private Walk Way is delineated by a dashed line within the solid lines of Lot 14. Sea Woods Terrace is a dedicated public street within Sea Woods Park. The Private Walk Way connected to a stairway down to the beach and is in approximately the same location as the path that the LaBarre family members formerly used to gain access to and from their individual parcels. The parties agree that the Private Walk Way is not expressly dedicated as a public path or right-of-way. By four warranty deeds recorded June 18, 1957, the LaBarre heirs divided the lots of Sea Woods Park among themselves, expressly cross-referencing in the deeds the plat recorded in Book 9, Page 7 of the Lincoln County Plat Records.

Defendant, whose chain of title is through Corinne LaBarre, purchased her property, Lot 14, in 1972. The deed made no mention of an easement and described the property as "free of all encumbrances exc[ept] of record." The deed did not cross-reference the plat. Defendant did, however, learn of the plat and acquired a copy of it before she purchased the property. On a tour of the property, she saw the path and the stairs down to the beach and asked the sellers of Lot 14 the significance of a "Private" sign that they had placed on the path. The sellers told her that the sign was meant to notify others that the path was theirs, although they allowed neighbors to use it. Defendant was aware that others in the subdivision were using the path. Defendant's lawyer and a real estate agent reviewed the plat and researched Lincoln County records and found no record of an easement or encumbrance on Lot 14.

In fact, two of the pre-plat deeds to the LaBarre heirs, encompassing what later became Lots 4, 5, and 6, described an appurtenant easement "for ingress and egress" over a 10-foot strip of land on what became Lot 14. Later conveyances made no express mention of an easement along the path.

After defendant purchased Lot 14, she continued to let neighbors use the Private Walk Way, but she believed that she had full ownership and control of it. In 1991, sand under the stairway was partly washed away, and, since that time, defendant has refused to allow anyone other than Craft, the owner of nearby Lots 5 and 6, to use the walkway.

Plaintiffs brought this action, seeking a declaration that they have an appurtenant easement over the Private Walk Way, including the stairway, by virtue of the plat notation that is cross-referenced in the four original deeds in their chain of title, and other evidence showing an intention on the part of the LaBarre heirs to create an easement for access to the beach to all subdivision owners. They further sought to enjoin defendant from preventing them from using the easement.

The trial court agreed with plaintiffs and entered the requested declaration and injunction. Defendant appeals, raising five assignments of error: (1) The trial court erred in declaring that plaintiffs have an express easement over Lot 14; (2) the court erred in rejecting defendant's *bona fide* purchaser defense; (3) the court erred in including an injunction as a part of its judgment; (4) the court erred in allowing plaintiffs to amend their complaint, post-trial, to add a claim for express easement; and (5) the court erred in denying defendant's motion for partial summary judgment as to plaintiff Craft on the ground that her claims were barred by claim preclusion.

■ We first address defendant's contention, raised in her fifth assignment of error, that Craft's claims are barred by claim preclusion. In *Craft I*, Craft established an easement interest in the Private Walk Way, appurtenant to Lots 5 and 6, through an express grant in her deed to those lots. We affirmed that judgment without opinion. *Craft v. Weakland*, 145 Or App 482, 928 P2d 366 (1996) (*Craft I*). In *Craft I*, Craft made no mention of her ownership of Lots 17, 18, and 25, although she owned those lots at the time. In the instant case, Craft seeks to establish an easement appurtenant to Lots 17, 18, and 25.

In *Bloomfield I*, these same plaintiffs sought implied easements over the Private Walk Way. By way of affirmative defense and in her motion for summary judgment, defendant asserted that the implied easement claims of *all the plaintiffs, including Craft*, were barred by claim preclusion because plaintiffs, including Craft as trustee, were in privity with Craft when she brought her easement claim in *Craft I*, relating to Lots 5 and 6. The trial court denied the motion;

this court affirmed that ruling, as did the Supreme Court. The Supreme Court explained that plaintiffs' claim was not the same one that Craft had pursued in the 1994 litigation, because "Craft had no legally cognizable interest in any lot in Sea Woods Park subdivision that she did not own." Accordingly, the court reasoned, the trial court in the 1994 action lacked authority to award Craft easements appurtenant to lots that she did not own. It followed, the court held, that the present action does not involve a single claim that plaintiffs improperly split, and the doctrine of claim preclusion does not bar it. The court took pains to note, twice, that defendant had made no *separate* claim preclusion argument on appeal with respect to *Craft's own* participation in the litigation as to Lots 17, 18, and 25. 339 Or at 511 n 5, 513 n 7.

On remand, plaintiffs filed a second amended complaint, and defendant filed an amended answer asserting as an affirmative defense that *Craft's claim* with respect to Lots 17, 18, and 25 was barred by claim preclusion. Defendant also sought a partial summary judgment as to Craft's claim on that same ground. The trial court denied the motion.

■■■ Defendant asserts that the trial court erred in denying her motion for partial summary judgment as to claims relating to Craft's three additional lots, because those claims could have been brought by Craft in 1994, in *Craft I*. At the outset, we disagree with plaintiffs' contention that defendant's claim preclusion defense previously has been decided against defendant and that that decision is the law of the case. The doctrine of the law of the case precludes relitigation or reconsideration of a point of law decided at an earlier stage of the same case. *Koch v. So. Pac. Transp. Co.*, 274 Or 499, 511-12, 547 P2d 589 (1976); *see also State v. Pratt*, 316 Or 561, 569, 853 P2d 827, *cert den*, 510 US 969 (1993) (law of the case doctrine applies "when a ruling or decision has been once made in a particular case by an appellate court"). The doctrine typically is invoked to give preclusive effect to legal rulings made or sustained in prior appeals in the same litigation:

" 'It is a general principle of law and one well recognized in this state that when a ruling or decision has been once made in a particular case by an appellate court, while it

may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.'"

*Pratt*, 316 Or at 569 (quoting *Simmons v. Wash. F. N. Ins. Co.*, 140 Or 164, 166, 13 P2d 366 (1932)).

The record shows that defendant's claim preclusion affirmative defense asserted in *Bloomfield I* was directed against all plaintiffs, including Craft. In her first summary judgment motion, defendant contended that all plaintiffs' claims were barred, because the claims were the same as the claim resolved in *Craft I*, and there was privity with Craft. The Supreme Court noted in *Bloomfield I* that the parties did not argue and it did not decide the preclusive effect of *Craft I* with respect to Craft's own claims as to Lots 17, 18, and 25. 339 Or at 511 n 5, 513 n 7.[3] Thus, the Supreme Court held in *Bloomfield I* that the claims of plaintiffs *other* than Craft were not barred by Craft's 1994 litigation. We conclude for that reason that the Supreme Court's rejection of defendant's earlier claim preclusion defense does not establish the "law of the case" with respect to the argument that she now makes with respect to Craft's Lots 17, 18, and 25.

We further reject plaintiffs' contention that defendant is precluded from raising this current claim preclusion argument because she did not raise it in her first set of appeals.[4] Although we certainly do not encourage piecemeal litigation strategies, on remand, the trial court allowed amended pleadings, including defendant's amended answer, which again asserted claim preclusion as an affirmative defense, but only with respect to Craft. Other than as might

---

[3] The court stated:

"Again, we emphasize that the parties do not argue, and we do not decide, whether claim preclusion bars Craft *herself* from participating in the instant case * * *."

339 Or at 513 n 7 (emphasis in original).

[4] Our review shows that defendant's first motion for summary judgment was directed against all lot owners and separately mentioned Craft's additional lots.

be limited by the trial court's exercise of discretion in allowing the amendment of pleadings, we know of no rule that prevents a party from raising new legal arguments on remand after an appellate court has reversed a summary judgment ruling.

We move on to consider whether Craft's claims as to Lots 17, 18, and 25 are barred by claim preclusion. In its opinion in *Bloomfield I*, the Supreme Court discussed the doctrine of claim preclusion, which generally prohibits a party from relitigating the same claim or splitting a claim into multiple actions against the same opposing party. 339 Or at 510. The court stated that the doctrine "forecloses a party that has litigated a claim against another from further litigation on that same claim on any ground or theory of relief that the party could have litigated in the first instance." *Id.* at 511. A "claim" was defined broadly by the court. The court cited its statement in *Troutman v. Erlandson*, 287 Or 187, 201, 598 P2d 1211 (1979), that "[f]or res judicata purposes a 'claim' or 'cause of action' * * * [means] a group of facts which entitled plaintiff to relief." The court said in *Bloomfield I* that claim preclusion applies with respect to

> "all or part of the transaction, or connected series of transactions, out of which the first action or proceeding arose, where the claim in the second action seeks a remedy in addition or as an alternative to the one sought earlier and the claim is of such a nature that it could have been joined in the first action."

339 Or at 513 (citing *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982)). In rejecting defendant's contention that the claims of plaintiffs other than Craft were part of the same claim involved in *Craft I*, the Supreme Court explained in *Bloomfield I* that the trial court in *Craft I* lacked authority to award Craft easements appurtenant to lots that she did not own:

> "That is, the only relief that the trial court *could* have granted to Craft on her claim in [*Craft I*] was an easement appurtenant to the lot that *she* in fact owned. The claims of other lot owners for easements appurtenant to *their* lots were—and remain—separate from Craft's claim; Craft never had the ability to protect the interests of the present

plaintiffs during the earlier action. It follows that the present action does not involve a single claim that plaintiffs split improperly, and the doctrine of claim preclusion does not bar it."

339 Or at 514 (footnote omitted; emphasis in original). As previously mentioned, the court expressly noted that defendant had not made a separate contention on appeal that Craft's claims as to the three other lots Craft owned were barred by claim preclusion, and the court therefore did not address whether those claims would be barred. 339 Or at 511 n 5, 513 n 7.

■   We are now asked to consider whether claims relating to Craft's own Lots 17, 18, and 25 are barred. In answering that question, we inquire whether the claims "were 'related in time, space, origin, or motivation, [and] whether they form a convenient unit,' " as well as whether they were "substantially of the same sort and similarly motivated." *McAmis Industries v. M. Cutter Co.*, 161 Or App 631, 637, 984 P2d 909, *rev den*, 329 Or 553 (1999) (quoting *Whitaker v. Bank of Newport*, 313 Or 450, 456, 836 P2d 695 (1992)) (emphasis omitted).

Here, each of the elements of claim preclusion would appear to be satisfied. As previously noted, Craft prevailed in *Craft I* based on express easements appurtenant to Lots 5 and 6, and the current claims involve Lots 17, 18, and 25. As the Supreme Court noted, the fact that one lot includes an easement to use defendant's walkway does not necessarily mean that any other lot, even one belonging to the same plaintiff, includes a similar easement. *Bloomfield I*, 339 Or at 514 n 9. Nonetheless, we conclude that the current claims are the same as Craft's claims in *Craft I*, because they relate to the same factual transaction as *Craft I*—they depend on the legal effect of the same documents at issue in *Craft I* and relate to the creation of the subdivision, the conveyances of lots in the subdivision, and the plat's designation of a Private Walk Way. Additionally, Craft's motivation here is the same as in *Craft I*—she seeks an easement appurtenant to Lots 17, 18, and 25 over the same Private Walk Way litigated in that earlier case. The doctrine of claim preclusion is based in part on the policy of achieving finality on a dispute and preventing

the splitting of a dispute into separate controversies. *Drews v. EBI Companies*, 310 Or 134, 140-41, 795 P2d 531 (1990). We conclude that that policy would not be served by allowing Craft to bring these claims now in this proceeding. We therefore conclude that Craft's claims as to Lots 17, 18, and 25 are barred by claim preclusion.

■ ■   We next consider defendant's contention, in her fourth assignment of error, that the trial court abused its discretion in allowing plaintiffs to amend their complaint after trial to allege a claim for express easement, consistent with the trial court's determination that the plat gave rise to an express easement. ORCP 23 B provides that amendment of the pleadings to conform to the evidence "may be made upon motion of any party at any time, *even after judgment.*"[5] (Emphasis added.) We review a trial court's ruling on a motion for leave to file an amended complaint for abuse of discretion. *Brasch v. Quan*, 162 Or App 472, 476, 986 P2d 1183 (1999) (applying abuse of discretion standard to review of ruling under ORCP 23 B). The trial court abuses its discretion if it exercises it in a manner that is unjustified by, and clearly against, reason and evidence. *Quillen v. Roseburg Forest Products, Inc.*, 159 Or App 6, 10, 976 P2d 91 (1999). The Supreme Court has said that the trial court has "ample discretionary authority to allow amendments, provided the proffered amendment does not substantially change the cause of action or interject an entire new element of damage." *Cutsforth v. Kinzua Corp.*, 267 Or 423, 433-34, 517 P2d 640 (1973) (citation omitted); *accord Forsi v. Hildahl*, 194 Or App 648, 652, 96 P3d 852 (2004).

---

[5] ORCP 23 B provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining an action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

■ Defendant's only contention is that the express easement claim was not tried by consent. However, in light of the significance of the plat and the Private Walk Way as the source of either an express or implied easement, we agree with the trial court that the express easement claim was tried by implied consent. We further conclude that defendant suffered no cognizable prejudice by the trial court's consideration of the express easement theory or allowance of an amendment of the complaint to conform to the court's ruling. For those reasons, the trial court did not abuse its discretion in allowing plaintiffs to amend their complaint after trial in a manner consistent with the evidence at trial and the trial court's determination that plaintiffs had established an express easement.[6]

■ We turn to the merits of the case and consider whether the trial court erred in determining that plaintiffs have an express easement appurtenant to each of their lots over a part of defendant's property for access to and from the beach. An easement is a right in one person to do certain acts on land of another. *German Savings & Loan Soc. v. Gordon*, 54 Or 147, 150, 102 P 736 (1909). A pure easement appurtenant is one where the land of one person, the servient tenement, is subjected to some use or burden for the benefit of the lands of another person, the dominant tenement. *Patterson v. Chambers Power Co.*, 81 Or 328, 348, 159 P 568 (1916). An easement is created by grant or reservation, express or implied, or by prescription from which a grant is presumed. *Tusi v. Jacobsen*, 134 Or 505, 508, 293 P 587, *reh'g den*, 134 Or 505, 293 P 939 (1930). An express easement is one expressed clearly in writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement. *See Dressler et al v. Isaacs et al*, 217 Or 586, 343 P2d 714 (1959); *Gange et ux v. Hayes et al*, 193 Or 51, 237 P2d 196 (1951).

■ ■ The deeds in the chain of title of each plaintiff's lot make no mention of an easement over Lot 14. They do, however, refer to the plat, which delineates the Private Walk

---

[6] As we said in *Bloomfield I*, an implied easement is disfavored and must be established by clear and convincing evidence. 193 Or App at 795. An express easement is established by a preponderance of the evidence. ORS 10.095(5).

Way by a dashed line. It is that plat that the trial court determined, and plaintiffs now assert, provides an express easement appurtenant to each of the lots of the subdivision. No doubt, a plat can give rise to an express easement or dedication for private or public use. In *Menstell et al v. Johnson et al*, 125 Or 150, 178, 183-84, 262 P 853, *reh'g den*, 125 Or 150, 266 P 891 (1928), the court stated,

> "It seems well settled that the deed and the plat are to be read together and many authorities hold that whatever appears upon the plat is to be considered as a part of the deed."

In *Carter v. City of Portland*, 4 Or 339, 346 (1873), the Supreme Court said that when the owner of land lays out a town on a plan or map, and sells lots with reference to that plan or map, "the purchasers of lots in said town acquire as appurtenant thereto every easement, privilege and advantage which the plan or map represents as part of the town." A plat need not expressly grant an easement or dedicate a way for public use. It is sufficient if the plat, interpreted as a whole, reflects an intention to benefit the subdivision owners. *Menstell*, 125 Or at 174-76.

The plat to Sea Woods Park does not expressly describe an "easement"—it simply delineates the Private Walk Way. However, a "way" is a type of easement. *See Bernards et ux v. Link and Haynes*, 199 Or 579, 248 P2d 341 (1952), *on reh'g*, 199 Or 579, 263 P2d 794 (1953); *Montagne v. Elliott*, 143 Or App 498, 923 P2d 1344 (1996).[7] Although it is labeled "private," the Private Walk Way delineates a "way" to the beach. If, as defendant contends, the benefit of the "way" is only to Lot 14, there was no need to describe it in the plat. For that reason, we have little difficulty concluding that, despite the absence of the word "easement," the Private Walk Way is an express easement. The narrower, and dispositive, question is the extent of that easement.

The interpretation of an express easement is a question of law for the court. In construing an easement, our task

---

[7] ORS 105.170 provides that an " '[e]asement' means a nonpossessory interest in the land of another which entitles the holders of an interest in the easement to a private right of way, embodying the right to pass across another's land."

is to discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner. *Bernards*, 199 Or at 593. To determine an easement's purpose, "[w]e look first to the words of the easement, viewing them in the context of the entire document." *Kell v. Oppenlander*, 154 Or App 422, 426, 961 P2d 861 (1998). Our goal in interpreting the plat to determine the extent of the Private Walk Way is to determine the parties' intentions. *See Tipperman v. Tsiatsos*, 327 Or 539, 544-45, 964 P2d 1015 (1998) (construing easement); *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) (construing contract). We look first to the language of the instrument itself and consider its text in the context of the document as a whole. If the text's meaning is unambiguous, the analysis ends, and we interpret the provision's meaning as a matter of law. *Yogman*, 325 Or at 361.

**20-22.** To determine whether a provision in a document is ambiguous, the court can consider evidence of the circumstances surrounding its execution. *Abercrombie v. Hayden Corp.*, 320 Or 279, 292, 883 P2d 845 (1994); *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 129 P3d 773, *rev den*, 341 Or 366 (2006). If the court determines that the contract's provisions are ambiguous, the court may then examine extrinsic evidence of the surrounding circumstances with the goal of resolving the ambiguity. *Tipperman*, 327 Or at 545; *Yogman*, 325 Or at 363-64. If an ambiguity nonetheless remains, the court may resolve the contract's meaning by turning to applicable maxims of construction. *Yogman*, 325 Or at 364-65. The goal is always to give effect to the parties' intentions. *See Fendall v. Miller*, 99 Or 610, 615, 196 P 381 (1921) ("The extent of an easement is to be determined by a true construction of the grant or reservation by which it is created, aided by any concomitant circumstances which have a legitimate tendency to show the intention of the parties. If the grant is specific in its terms, it is decisive of the limits of the easement. On the other hand, where the easement is not specifically defined the rule is that it need be only such as is reasonably necessary and convenient for the purpose for which it was created. The servient estate will not be burdened to a greater extent than was contemplated or intended at the time of the creation of the easement[.]").

Thus, we turn to the plat itself for clues as to the parties' intentions regarding the scope of the easement. One initial conclusion is apparent immediately from the text: The Private Walk Way establishes "private" access to beach—that is, it excludes the public at large. Beyond that, the plat offers few clues as to whether the walkway was intended to be private to all owners of the subdivision or to just a subset of owners—perhaps, as defendant theorizes, those whose deeds reflect express easements. The walkway extends to the beach from a street accessible to all subdivision owners and would provide convenient beach access. But the plat also describes beach access at the south end of the subdivision, delineated the "Path to Beach," that could have been intended as either a primary or additional beach access for subdivision owners. We conclude that, on its face, the plat plausibly establishes the Private Walk Way as beach access for all subdivision owners; equally plausibly, the use of the Private Walk Way is limited to a smaller subset of owners.

Because the record contains evidence concerning the circumstances surrounding the dedication of the plat and the parties' intentions, it was appropriate for the trial court to consider that evidence in determining whether the plat is ambiguous. *See Batzer Construction, Inc.*, 204 Or App at 319. After considering that evidence, the court concluded that the plat was unambiguous, and that "the plat map showing the private walkway clearly set out a pathway that was to benefit the entire subdivision." As was true in *Batzer Construction, Inc.*, the trial's conclusion "is pregnant with implicit factual findings." *Id.* We review the court's explicit and implicit findings of fact for any evidence in the record to support them, and the legal consequences of those facts for legal error. *Id.*

The trial court made written findings in support of its conclusion. We have reviewed the extrinsic evidence, and suffice it to say that, although there is evidence supporting both plaintiffs' and defendant's view of the grantors' intentions, the evidence more than sufficiently supports the trial court's view that, in describing a Private Walk Way, the LaBarre heirs intended to create a way to the beach for the benefit of the entire subdivision. We conclude, for those reasons, that the trial court did not err in determining that the

plat unambiguously creates an express easement appurtenant to all subdivision lots.

█ █ Defendant contends in her second assignment of error that the trial court erred in rejecting her defense that she was a *bona fide* purchaser, who took free and clear of any easement. A *bona fide* purchaser is one who purchases land without knowledge or actual or constructive notice of the existence of an easement. *Silvernale v. Logan*, 252 Or 200, 205, 448 P2d 530 (1968). Our review of this assignment of error is *de novo*; however, we give deference to the trial court's factual determinations, particularly with respect to conflicting evidence. *Kuhn v. Heerwagen*, 43 Or App 755, 760, 604 P2d 416 (1979) (citing *Cheney v. Mueller*, 259 Or 108, 119, 485 P2d 1218 (1971)).

As defendant contends, her deed to Lot 14 made no reference to an easement and expressly stated that the property was free of all encumbrances "exc[ept] of record." There is evidence that defendant made reasonable inquiry—consulting the sellers, a lawyer, and a real estate agent—and concluded, based on their advice and to her own satisfaction, that the lot was unencumbered by an easement. She claims that she made all the inquiries that a reasonable person in her circumstances would have made to be certain of her unencumbered interest in the property, and that she would not have purchased it had she been aware of the easement.

However, as noted, defendant saw the plat and the Private Walk Way notation prior to her purchase of Lot 14. A preliminary title report that defendant received prior to her purchase of Lot 14 noted the walkway as an exception. Based on that evidence, and testimony that, at the time that she purchased the property, plaintiff was aware that subdivision owners were using the walkway, that she continued to allow them to use it, and that she worked collectively with subdivision owners for almost 20 years to maintain the stairs, the trial court concluded that defendant was not a *bona fide* purchaser. In light of our conclusion that the deeds and plat in defendant's chain of title granted an express easement over Lot 14, we conclude that defendant had constructive, if not actual, notice of the easement. Accordingly, she was not a *bona fide* purchaser.

■ Having determined that plaintiffs have an easement over the Private Walk Way on Lot 14, the trial court found further that defendant's refusal to allow the construction of a new stairway has caused and will continue to cause irreparable harm to plaintiffs in the form of diminution in value of their lots and their enjoyment of their lots and that plaintiffs have no plain, adequate, and speedy remedy at law. Consequently, the trial court permanently enjoined defendant from interfering with plaintiffs' use of the easement and interfering with plaintiffs' right to maintain the pathway and stairs on the easement. Defendant challenges that ruling in her third assignment of error. As previously noted, we review that ruling *de novo*, deferring to the trial court's resolution of conflicting evidence.

■ An injunction is an appropriate remedy for interference with an easement. *Van Natta v. Nys and Erickson et al*, 203 Or 204, 227, 278 P2d 163 (1954), *on reh'g*, 203 Or 235, 279 P2d 657 (1955). We have examined the record and conclude that, considering the duration of this litigation and the length of time that defendant has prevented plaintiffs' use of their easement, as well as the potential for harm to the marketability or value of the subdivision lots should defendant's interference continue, the entry of an injunction was appropriate.

Judgment reversed as to plaintiff Lin L. Craft; otherwise affirmed.