Argued and submitted April 2, 2012, University of Oregon, Eugene, affirmed
April 24, 2013

Gregory MILLER
and Deborah Millsap,
*Plaintiffs*,
*and*

Allen WORTH;
and Kathy Worth,
fka Kathy Deatsch,
*Plaintiffs-Respondents*,

*v.*

Gloria Ann JONES,
Trustee of the Gloria Ann Hager Jones Revocable Trust,
*Defendant-Appellant*.

Douglas County Circuit Court
08CV1672CC; A147325

302 P3d 812

Dan G. McKinney argued the cause for appellant. With
him on the briefs was DC Law.

Stephen Mountainspring argued the cause for respondents. With him on the brief was Dole, Coalwell, Clark, Mountainspring & Mornarich, P.C.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Plaintiffs Allen and Kathy Worth and defendant Jones are owners of adjacent properties.[1] Plaintiffs brought an action for declaratory relief against defendant, seeking (1) a declaration that a 1999 agreement between plaintiffs' predecessors-in-interest (the Hopkinses) and defendant's predecessors-in-interest (the Busbys) created an appurtenant easement granting plaintiffs the right to use, service, and maintain an irrigation pipeline running through defendant's property or, alternatively, (2) a declaration that plaintiffs have an implied easement to the same effect. The trial court concluded that the agreement created an appurtenant easement in favor of plaintiffs or, alternatively, that plaintiffs have an implied easement. Defendant appeals, contending first that the "court erred in interpreting the [agreement] as [creating] an appurtenant easement in favor of plaintiffs." Specifically, defendant argues that the agreement unambiguously granted only a personal *license* to the Hopkinses and that, even if the agreement did create an easement in their favor, the easement was not appurtenant. Defendant also contends that the court erred in alternatively concluding that plaintiffs have an implied easement.[2] For the reasons set forth below, we conclude that the agreement unambiguously created an appurtenant easement granting plaintiffs the right to use, service, and maintain the pipeline. Accordingly, we affirm.[3]

The relevant facts are undisputed. The Busbys originally owned what is now defendant's property, which lies on the south bank of the Umpqua River. That property consists of tax lot 400 and tax lot 500. Mr. Busby also owned two parcels that lie south of defendant's property. Those two parcels were created as the result of a land partition initiated by Mr. Busby in 1998; what is now plaintiffs' property—

---

[1] Plaintiffs Miller and Millsap, who also own property adjacent to that of defendant, are not parties on appeal. Accordingly, all subsequent references to "plaintiffs" in this opinion refer only to Allen and Kathy Worth.

[2] Defendant also requests that we exercise our discretion under ORS 19.415(3)(b) to review this case *de novo*. To the extent that the underlying claims are equitable in nature, we decline to do so. *See* ORAP 5.40(8)(c) (providing that we exercise *de novo* review "only in exceptional cases").

[3] Given our disposition of the case, we do not address defendant's contention that the trial court erred in concluding that plaintiffs have an implied easement.

the western parcel—was designated as Parcel 1 of Land Partition 1998-0103, and a second property—the eastern parcel—was designated as Parcel 2 of Land Partition 1998-0103.

In November 1998, Mr. Busby deeded Parcel 1 of Land Partition 1998-0103 to plaintiffs' predecessors-in-interest, the Hopkinses. That parcel had (and still has) certificated water rights from the Umpqua River. Mr. Hopkins was familiar with the parcel because, as the Busbys' ranch hand, he had irrigated it using the Busbys' irrigation pipeline. At the time of the sale, that pipeline ran from the Umpqua River through the Busbys' property (tax lots 400 and 500) and Mr. Busby's remaining parcel (Parcel 2 of Land Partition 1998-0103) to the Hopkinses' parcel.

About four months after the sale, in March 1999, the Busbys and the Hopkinses entered into the following "Irrigation Pipeline and Access Agreement" (IPA Agreement):

"This agreement is entered into this 10th day of March 1999 by and between James Scott Busby and Margaret Mary Busby, hereafter referred to as Owners, and Jamie Lee Hopkins and Suzanne Kay Hopkins, hereafter referred to as Users.

"Whereas Owners shall give Users a non-exclusive right to service and maintain an existing underground irrigation pipeline and facility which services User's property known as Parcel 1 of Land Partition 1998-0103, Partition Platt records of Douglas County, Oregon. Users shall have the rights to service and maintain the existing underground pipeline facilities through Owner's Parcel 2 of Land Partition 1998-0103, and Parcels 1 and 2, also known as T-25 R7 S28, Tax Lot 400 and Tax Lot 500.

"The access through Parcel 1 and Parcel 2 (Tax Lot 400 and Tax Lot 500) shall be limited to a 15 ft. non-exclusive easement, which will run North to South between the two parcels. Five feet of said easement will be on the Easterly property line of Parcel 2 and 10 feet shall be on the Westerly property line of Parcel 1."

One month later, in April 1999, Mr. Busby deeded Parcel 2 of Land Partition 1998-0103 to Miller and Millsap. That same month, the Busbys granted Miller and Millsap

an easement over the Busbys' property. Several years later, in March 2005, the Busbys sold tax lots 400 and 500 to defendant. The Hopkinses then sold their parcel to plaintiffs in May 2006, and a dispute arose over whether plaintiffs were entitled—pursuant to the IPA Agreement—to use, service, and maintain the irrigation pipeline running through defendant's property.

As noted, plaintiffs brought an action for declaratory relief, seeking, among other things, a declaration that the IPA Agreement unambiguously created an appurtenant easement granting plaintiffs the right to use, service, and maintain the irrigation pipeline running through defendant's property. Defendant responded that the IPA Agreement unambiguously created only "a permission, a license, between Busby and Hopkins allowing Hopkins * * *, who is described as the user in the document, to use the pipeline for his property. It simply doesn't meet the test of an easement." Alternatively, defendant argued that, even if the IPA Agreement did create an easement in favor of the Hopkinses, it was not appurtenant— that is, it did not transfer by conveyance to plaintiffs.

The trial court concluded that, "under the terms of [the IPA Agreement]," plaintiffs have an "easement to use, service and maintain the existing westerly pipeline and facility over the Jones Property for the purpose of supplying water to the Worth Property." Defendant appeals, largely reiterating her arguments before the trial court.

As framed by defendant, the issues on appeal are as follows: (1) whether the IPA Agreement created an express easement in favor of the Hopkinses and, if so, (2) whether that easement is appurtenant such that it was transferred to plaintiffs by conveyance. Those questions require that we interpret the IPA Agreement. In doing so, "our objective is to ascertain the meaning that most likely was intended by the parties who entered into it." *Connall v. Felton*, 225 Or App 266, 271, 201 P3d 219, *rev den*, 346 Or 257 (2009) (citing ORS 42.240 ("In the construction of an instrument the intention of the parties is to be pursued if possible[.]")); *see also Tipperman v. Tsiatsos*, 327 Or 539, 964 P2d 1015 (1998) (construing deed); *Yogman v. Parrott*, 325 Or 358, 937

P2d 1019 (1997) (construing contract). "We look first to the language of the instrument itself and consider its text in the context of the document as a whole. If the text's meaning is unambiguous, the analysis ends, and we interpret the provision's meaning as a matter of law." *Connall*, 225 Or App at 272. "[A] contractual provision is ambiguous if it is capable of more than one sensible and reasonable interpretation; a term is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person." *Peace River Seed Co-Op v. Proseeds Marketing*, 253 Or App 704, 724, 293 P3d 1058 (2012) (internal quotation marks omitted). Furthermore, we are mindful that, "[i]n construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting." ORS 42.220; *see also Connall*, 225 Or App at 272 ("To determine whether a term in a document is ambiguous, the court can consider evidence of the circumstances surrounding its execution.").

With that framework in mind, we first consider whether, as the trial court concluded, the IPA Agreement unambiguously created an express easement. As noted, defendant argues that there is "no indication that the pipeline agreement was intended as anything more than a license for the Hopkins family to access the water irrigation pipeline while they owned [the property], which was sold to them by Mr. Busby." Plaintiffs respond that the use of the word "easement" twice in the IPA Agreement unambiguously demonstrates that the "'right' being granted is intended to be in the nature of an easement."

We conclude that the IPA Agreement unambiguously created a right in the nature of an easement. "An easement is a right in one person to do certain acts on land of another." *Bloomfield v. Weakland*, 224 Or App 433, 445, 199 P3d 318 (2008), *rev den*, 346 Or 115 (2009) (citing *German Savings & Loan Soc. v. Gordon*, 54 Or 147, 150, 102 P 736 (1909)). "An express easement is one expressed clearly in writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement." *Id.* As noted, the second paragraph of the IPA Agreement provides,

in part, that "Owners shall give Users a non-exclusive *right* to service and maintain an existing underground irrigation pipeline and facility which services User's property known as Parcel 1 of Land Partition 1998-0103." (Emphasis added.) It further provides that "Users shall have the rights to service and maintain the existing underground pipeline facilities *through* * * * Tax Lot 400 and Tax Lot 500." (Emphasis added.) Accordingly, the IPA Agreement plainly granted "Users" a right "to do certain acts" (to use, service, and maintain the pipeline and facility) "on land of another" (tax lots 400 and 500). *See Bloomfield*, 224 Or App at 445.

Further, examination of those provisions in the context of the document as a whole provides additional support for the trial court's conclusion that the IPA Agreement created an easement in favor of the Hopkinses. The third paragraph of the IPA Agreement provides that "[t]he access through * * * Tax Lot 400 and Tax Lot 500[] shall be limited to a 15 ft. non-exclusive *easement*[.]" (Emphasis added.) That provision plainly creates an easement granting the Hopkinses the right to access certain parts of tax lots 400 and 500 in order to effectuate the rights referenced in the second paragraph of the agreement—that is, the "right[s] to service and maintain an existing underground irrigation pipeline and facility which services User's property" across tax lots 400 and 500.[4] Put simply, the fact that the agreement expressly creates an easement allowing access to certain parts of tax lots 400 and 500 makes clear that the parties intended that the partially conterminous "right[s] to

---

[4] Defendant argues that the word "easement" in the IPA Agreement refers to "an actual easement agreement" that the Busbys executed two weeks *later* with Miller and Millsap, "granting to them an easement for the installation of a separate irrigation pipeline over what is now Defendant Jones's property." In defendant's view, the IPA Agreement granted the Hopkinses permission to access tax lots 400 and 500 at the location where the Busbys later granted an express easement to Miller and Millsap. To the extent that defendant is arguing that the term "easement" in the third paragraph of the IPA Agreement is ambiguous, we disagree. The third paragraph clearly provides that the right of access is "limited to a 15 ft. non-exclusive easement" and then describes the location of that easement. Parole evidence may only be considered to determine whether a contractual provision is ambiguous when that evidence relates to the "circumstances underlying the formation of [the] contract." *Sollars v. City of Milwaukie*, 222 Or App 384, 388, 193 P3d 75 (2008), *rev den*, 346 Or 184 (2009). Here, evidence that the Busbys and Miller and Millsap executed an agreement creating an express easement to install a separate pipeline *weeks after* the IPA Agreement was signed does not relate to the circumstances of the IPA Agreement's formation.

service and maintain the existing underground irrigation pipeline and facility" also be of the same duration and in the nature of an easement. Read together, the two paragraphs are not "capable of more than one sensible and reasonable interpretation." *See Peace River Seed Co-Op*, 253 Or App at 724. That is, the alternate interpretation—that the IPA Agreement granted the Hopkinses an easement to access the pipeline but only a revocable license to use, service, and maintain that pipeline—is untenable given the document's plain terms and the circumstances underlying its formation.

Defendant asserts that the IPA Agreement cannot be interpreted to have created an easement in favor of the Hopkinses because "the document title itself does not state that the agreement is to be an easement" and "there is no language stating that an easement is conveyed or granted." That argument is not well taken. Defendant points to no authority establishing that certain words are *required* to create an express easement; rather, as noted, "[a]n express easement is one expressed clearly in writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement." *Bloomfield*, 224 Or App at 445; *see id.* at 446 (finding an express easement where the plat "does not expressly describe an 'easement'"). As illustrated above, the plain text of the IPA Agreement meets that standard.

We must still consider defendant's argument that, even if the IPA Agreement created an easement in favor of the Hopkinses, that easement was not appurtenant and, accordingly, was not transferred to plaintiffs by conveyance. An appurtenant easement "is one where the land of one person, the servient tenement, is subjected to some use or burden for the benefit of the lands of another person, the dominant tenement." *Id.* at 445. "The right is enjoyed by the owner of the dominant estate by virtue of his ownership of the land. If the dominant estate is sold or otherwise transferred to another, the easement over the servient land is transferred as well." *Braat v. Aylett*, 278 Or 549, 552, 564 P2d 1030 (1977). "There is a strong preference for finding that an easement is appurtenant, especially where the deed specifically refers to property that could be the dominant

estate." *Verzeano v. Carpenter*, 108 Or App 258, 261, 815 P2d 1275 (1991), *rev den*, 312 Or 589 (1992) (citing *Hall v. Meyer*, 270 Or 335, 339, 527 P2d 722 (1974)).

Defendant argues that there is "no language showing an intent that the easement be permanent, assignable, or anything other than personal to the Hopkinses." Our case law, however, does not require specific language demonstrating an intent that an easement be appurtenant.[5] Instead, that intent is assumed in the first instance. As noted, the preference is for finding that an easement is appurtenant— especially where the dominant estate is identified—unless specific language demonstrates a contrary intent. *See Hall*, 270 Or at 339 (noting the preference for finding that an easement is appurtenant and stating that, in that case, "[t]he reservation [did] not contain language sufficient to override that preference" (footnote omitted)); *see also Verzeano*, 108 Or App at 261 (concluding that an easement is appurtenant where, "[a]lthough the property is not precisely defined," the language of the conveyance is clear that the property was intended to be the dominant estate). Here, defendant has identified no language demonstrating a contrary intent. More importantly, the IPA Agreement expressly refers to the dominant estate: Parcel 1 of Land Partition 1998-0103. Thus, consistently with the "strong preference" described above, we conclude that the easement is appurtenant.

In sum, we conclude that the IPA Agreement unambiguously created an appurtenant easement granting plaintiffs

---

[5] Defendant relies on *Hunnell v. Roseburg Resources Co.*, 183 Or App 228, 51 P3d 680, *rev den*, 335 Or 114 (2002), in advancing her argument that a trial court errs "in finding [that] an easement was intended to pass to successors and assigns where those words were not so stated in the document." *Hunnell* does not stand for that proposition. In *Hunnell*, we were tasked with interpreting an easement that provided that a company and "its successors and assigns" owned the easement "for and during such period of time as said [company] shall have ownership of any interest in or control over any timber [or] timberlands ***." *Id.* at 232 (internal quotation marks omitted; second brackets in *Hunnell*). The trial court concluded that the easement did not end with the dissolution of the company, and we reversed, concluding that the instrument created an easement for a limited term and that the easement therefore ended when the company no longer owned or controlled the timber or timberland and did not pass to the company's successor-in-interest. *Id.* at 234. Here, defendant has identified no language in the IPA Agreement that may be construed to create an easement only for a limited term, and, accordingly, *Hunnell* does not apply.

the right to use, service, and maintain the pipeline. Accordingly, the trial court did not err.

Affirmed.