Argued and submitted February 17, reversed and remanded June 10, 1998

Reed KELL,
*Appellant,*

*v.*

Rayella OPPENLANDER,
*Respondent,*

*and*

CITY OF SEASIDE, OREGON;
Jim O'Brien, Executive Officer,
Building and Permit Department, City of Seaside,
*Defendants..*

(95-2017; CA A95069)

961 P2d 861

David B. Harris argued the cause and filed the brief for appellant.

Wendy M. Margolis argued the cause for respondent. With her on the brief were Thomas W. Brown and Cosgrave, Vergeer & Kester, LLP.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

In this action to quiet title,[1] the dispute turns on the interpretation of an express easement. Plaintiff and defendant filed cross-motions for summary judgment, essentially asking the trial court to determine whether actions taken by defendant triggered the easement's termination clause as a matter of law. The court granted summary judgment for defendant. Plaintiff appeals and we reverse.

In August 1988, plaintiff purchased the vacant lot next to defendant's property, intending to build on it. Although plaintiff had not read the easement prior to his purchase, he was told by the seller that a garage attached to defendant's home extended five feet onto plaintiff's property, pursuant to a contractually granted easement.[2] The seller explained to plaintiff that the easement was for the maintenance and use of the existing garage and that it would last until "the garage was torn down, rotted down or something." The written easement provided:

"Easement for the maintenance and use of the existing structure over the Easterly 5 feet of lot 15 * * *. This easement shall become void and of no further consequence upon removal of the encroaching garage."

In 1990 or 1991, defendant replaced the exterior siding of the garage and removed the garage door and window, adding studs and siding to each area. After that work, the structure was no longer useable as a garage and, instead, was used only as a storage room. Although defendant disputes the point, plaintiff contends that defendant did extensive work to the structure, by removing and replacing some studs, as well as lifting the structure and propping it on stilts so that a new perimeter foundation could be laid. In the end, the structure looked substantially the same (except for the lack of a garage door and window), was attached to defendant's house in the

---

[1] Though primarily seeking to quiet title, plaintiff also filed claims for trespass, nuisance, intentional interference with economic relations against defendant, and a claim for inverse condemnation against the City of Seaside. Following the trial court's ruling on summary judgment, the trial court granted plaintiff's motion to dismiss all of the remaining claims, none of which is before us in this appeal.

[2] The record does not reveal when, or by whom, the easement was created.

same manner, was located in the same place, and burdened plaintiff's use of his property to the same extent as it had before the work.

Before trial, defendant moved for summary judgment, arguing that the work done on the structure did not come within the clause providing that the easement would terminate "upon removal of the encroaching garage." Plaintiff filed a cross-motion for summary judgment, contending that the easement was terminated either by defendant's change of use of the structure from a garage to a storage unit or by defendant's act of physically altering the structure. The trial court granted defendant's motion, concluding that:

"1. There is no evidence that there was a 'removal' of the garage as the court interprets that term as used in the context of the written easement at issue.

"2. The change in the use of the garage structure to a storage room by the removal of the front door does not constitute a 'removal' of the garage, as the use of the structure as storage room is a reasonable use within the context of the written easement at issue."

On appeal, plaintiff challenges both bases for the trial court's grant of summary judgment for defendant. Plaintiff first argues that there was a material issue of fact as to whether defendant's alteration of the structure constituted a physical "removal" of the structure within the meaning of the easement agreement. Second, plaintiff argues that the easement functionally was extinguished by defendant's act of changing the structure's use from a garage to a storage room. According to plaintiff, because the change in use is not disputed, the easement was terminated "as a matter of law" and, therefore, the court should have granted summary judgment for plaintiff rather than for defendant.

In deciding whether summary judgment was proper, we first determine whether there are any issues of material fact. If there are none, then we review the rulings on the cross-motions for summary judgment to determine which party is entitled to judgment as a matter of law. *Stevens v. Bispham,* 316 Or 221, 223, 851 P2d 556 (1993). If there are disputed issues of material fact, then we review the evidence and all reasonable inferences in the light most favorable to

the nonmoving party and determine whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1996).

■     The interpretation of an express easement, like that of contracts and other written instruments, is a question of law for the court. *State Highway Com'n v. Deal et al.*, 191 Or 661, 681-82, 233 P2d 242 (1951); ORS 42.230. We look first to the words of the easement, viewing them in the context of the entire document. *Yogman v. Parrot*, 325 Or 358, 361, 937 P2d 1019 (1997). If the terms of the easement are clear, our analysis ends. *Id.*; *Minto v. Salem Water Etc. Co.*, 120 Or 202, 210, 250 P 722 (1926); ORS 42.230. If ambiguity remains, we look to extrinsic evidence for manifestations of the parties' intent. *Yogman*, 325 Or at 363; ORS 41.740; ORS 42.220; *see also Fendall v. Miller*, 99 Or 610, 615, 196 P 381 (1921) (court can examine circumstances at time of easement's conveyance to show parties' intent); *Verzeano v. Carpenter*, 108 Or App 258, 261-62, 815 P2d 1275 (1991), *rev den* 312 Or 589 (1992) (same). Finally, if those inquiries fail to establish the parties' intent, we consider other relevant doctrines of construction. *Yogman*, 325 Or at 364.

We turn first to plaintiff's argument that the change of use terminated the easement. Neither party disputes the plain meaning of the term "garage" as a structure in which to store or park a motor vehicle, such as a car. Likewise, neither party disputes that the structure was modified so that it no longer can be used as a garage; instead, it has been converted into a storage room. According to plaintiff, the easement by its terms requires the structure to be used only as a garage. Therefore, plaintiff argues, "as a matter of law" the conversion of the garage terminated the easement.

The answer depends on whether, as used in the written grant of the easement, "garage" is a term of description or of limitation. That is, was the reference to the encroaching "garage" a convenient shorthand to identify the structure by the use to which it was then being put? Or did the parties intend the easement to terminate if the structure was put to any other use?

■     In total, the written easement consists of only two sentences. The first is best described as a purpose clause: it

grants the easement "for the maintenance and use of the existing structure over the Easterly 5 feet of lot 15[.]" The second sentence, accurately described as the termination clause, extinguishes the easement upon the happening of a particular event: "This easement shall become void and of no further consequence upon removal of the encroaching garage." The easement does not provide expressly that it will continue only as long as the structure is used as a garage, and if the structure ceases to be used as a garage, the easement will terminate. Nevertheless, plaintiff attempts to divine that limitation from the language terminating the easement "upon removal of the encroaching garage," arguing that to change the structure's use to a storage room amounts to a removal of it as a garage.

■      That interpretation of the language is strained, at best. The easement is expressly granted for "use" of the "existing structure," without any suggestion that the uses to which the structure may be put are limited. Moreover, plaintiff's argument depends on an unnatural understanding of the term "removal," as used in the easement's termination clause. "Removal" in everyday parlance means "to move by lifting, pushing aside, or taking away or off." *Webster's Third New Int'l Dictionary,* 1921 (unabridged ed 1993). In the particular context in which it appears—that is, with reference to removal of a physical structure—the term refers most naturally to a physical event affecting the structure's situs. We decline to give the term the far less familiar and usual meaning of a functional change in use. *See Fendall,* 99 Or at 616-17 (words in the grant of an easement should be given their plain, ordinary meaning). Based both on the purpose clause, which does not limit the use of the structure, and the termination clause, which refers to a physical removal rather than a change in use, we construe "garage" as a term of description, rather than of limitation. *See Tipperman v. Tsiatsos,* 140 Or App 282, 286, 915 P2d 446, *rev allowed* 324 Or 176 (1996) (easements are to be construed reasonably to give practical effect to the grant).

■      Moreover, ordinarily, a "grantee [of an easement] is not restricted to the methods of use which were current at the time of the grant," but reasonably may change that use over time as long as the burden on the servient estate is not increased. *Bernards et ux. v. Link and Haynes,* 199 Or 579,

593-97, 248 P2d 341, *on reh'g* 199 Or 605, 263 P2d 794 (1953). To restrict an easement grantee's use, the Supreme Court requires express language clearly imposing a use limitation or extrinsic evidence that the parties so intended. *Jones v. Edwards*, 219 Or 429, 433-35, 347 P2d 846 (1959). Where the language is equivocal and there is no evidence or only scant evidence of what the parties intended, as is true here, the Supreme Court gives an easement its ordinary scope, permitting the use reasonably to change with changing needs. *Id.*

■     In this case, defendant's change in use did not alter the size or shape of the structure or increase the burden on plaintiff's estate. Its current use is similar to its previous one (*i.e.*, storage). We therefore hold that the use of the structure as a storage room rather than a garage is within the scope of uses permitted by the easement. The trial court did not err in that portion of its ruling.

Next, we consider plaintiff's argument that there is a factual issue as to whether defendant's act of altering the structure constituted a physical "removal" of the garage. The proper approach and allocation of responsibility between the judge and the jury is the same as that for other written instruments. The court must decide, as a matter of law, the meaning of the terms in the written instrument. If the undisputed facts clearly come within that legal meaning, then the court can give judgment for the appropriate party as a matter of law. However, "[i]f the facts are disputed or if varying legitimate inferences can be drawn from established facts, the question is one for the jury." *Botts v. Hartford Acc. & Indem. Co.*, 284 Or 95, 103-04, 585 P2d 657 (1978) (adopting approach for undefined terms in insurance policy); *Farmers Ins. Co. v. Munson*, 145 Or App 512, 519-20, 930 P2d 878 (1996), *rev den* 325 Or 368 (1997).

■     In this case, as reflected in the purpose clause, the easement expressly permits use and "maintenance" of the structure. The ordinary understanding of the term "maintenance" in this context is "the labor of keeping something (as building or equipment) in a state of repair or efficiency: care, upkeep." *Webster's* at 1362. On the other hand, the easement expressly terminates upon "removal" of the encroaching garage. As already noted, the common meaning of "removal"

is "to move by lifting, pushing aside, or taking away or off." *Webster's* at 1921. Moreover, the easement expressly refers to the use and maintenance of the "existing" structure in the purpose clause, and the removal of the "encroaching" garage in the termination clause. Giving these terms their plain, everyday meaning, as we should, *Fendall,* 99 Or at 617, the question is whether defendant's construction activities amounted only to the repair, care, or upkeep of the existing structure, or whether the existing structure was lifted, taken away, or taken off the servient estate. The key, in short, is whether defendant was preserving the existing structure, or whether the extent and nature of the work done constituted its removal and replacement. The question, thus, is one both of kind and degree.

On that point, the evidence presents a question for a factfinder to resolve. Giving plaintiff the benefit of the strongest case possible, defendant essentially disassembled and then reassembled the structure, using some of the original materials, but also using new materials. A new perimeter foundation was poured. In the process of doing that, for a short time, only the roof of the structure, supported by stilts, remained in place. The structure was then rebuilt, duplicating the previous size and shape, and ultimately encroaching no more and no less on the servient property than it had before.

Whether defendant's actions, so viewed, amounted to the repair, care, and upkeep of the existing structure, or instead resulted in the removal of the encroachment, is a question on which "varying legitimate inferences" can be drawn and reasonable jurors might differ. The common and ordinary understanding of the terms used in the easement are elastic and do not compel a single answer on those facts. Thus, the answer is not mandated as a matter of law. Accordingly, the trial court erred in granting summary judgment for defendant.

Reversed and remanded.