AOYAGI, P.J.
*217 In this dispute between neighbors, plaintiff has an express easement to access her property by way of defendants' driveway. Defendants sought a declaratory judgment regarding the terms and scope of that easement. Plaintiff also sought a declaratory judgment, as well as damages and injunctive relief for breach of easement, interference with irrigation, trespass, and emotional distress. After a bench trial, the court ruled that plaintiff has a valid easement, declared the terms and scope of that easement, and concluded that defendants had breached the easement by blocking a portion of plaintiff's driveway and by removing an electronic gate. The court denied plaintiff's other claims.
On appeal, defendants raise three assignments of error, and, on cross-appeal, plaintiff raises four assignments of error.[1] Except for defendants' second assignment of error, we reject all of the parties' assignments of error without written discussion. In their second assignment of error, defendants argue that the court erred in concluding that plaintiff's easement includes an affirmative obligation for defendants to maintain an electronic gate at the entrance to their driveway. We agree with defendants as to the electronic gate and therefore reverse and remand on that issue. Otherwise, we affirm the judgment in all respects.
We set forth the relevant facts in a manner consistent with the trial court's express and *33 implicit factual findings. Manusos v. Skeels , 263 Or. App. 721, 724, 330 P.3d 53 (2014). We also include certain undisputed historical facts from the record.
Plaintiff owns real property in Grants Pass that was previously owned by her mother, Spickler. Defendants own real property next door that they purchased from a trust of which Spickler was the trustee. We refer to plaintiff's property as the 4963 property and defendants' property as the 4965 property. The two properties are adjacent to one another, and both face the same road. The only *218 existing motor vehicle access to plaintiff's property is via defendants' paved driveway. Defendants' paved driveway is 266 feet long and runs near the western edge of defendants' property. Plaintiff has an unpaved U-shaped driveway on her own property that meets defendants' paved driveway at two points-referred to as the "northern leg" and the "south-ern leg"-approximately 60 feet apart at the eastern edge of plaintiff's property.[2] The following is a rough approximation, not to scale, of the layout of the two properties and their relevant features.
In August 2007, when the trust still owned the 4965 property, Spickler recorded an easement for the benefit of the 4963 property. The easement provides:
"The first party hereby grants, assigns and sets over to the second party an easement, to-wit:
*219 "1. Access for ingress + egress over + across the driveway for 4965 [Street Name], to 4963 [Street Name]. Along with Remote control + code for gate.
"2. Access to Power Pole + electrical outlet next to irrigation ditch. Access to irrigation ditch."
At the time the easement was recorded, an electronic gate, operable by remote control or key code, was located at the entrance to the 4965 driveway. Once through the gate, there was no fence or other physical divider between the 4965 and 4963 properties.
In October 2007, defendants purchased the 4965 property from the trust. At that time, defendants knew of plaintiff's actual usage of the 4965 driveway to access the 4963 property. Defendants also knew about the recorded easement. Indeed, at one point prior to completing the sale, defendants proposed an addendum to the sales agreement to clarify what they considered the "vague description *34 of the easement" and specifically fix its location. Defendants withdrew that proposal after speaking with an attorney and plaintiff also informed defendants that Spickler rejected it.
In 2010, defendants built a fence at the western edge of their property, thereby physically separating their property from plaintiff's property. The fence contains a single 14-foot opening, located at the northern leg of plaintiff's U-shaped driveway. Also in 2010, defendants removed the electronic gate located at the entrance to their driveway.
Those events, among others, led plaintiff to file the present action. After a bench trial, the trial court ruled that plaintiff has a valid "express easement for ingress and egress over and across the existing paved driveway on the real property currently owned by [d]efendants." The court declared the terms and scope of the easement in detail in its judgment. Of significance on appeal, the court interpreted the easement as allowing defendants to build a fence, but as requiring them to leave two openings in the fence so that plaintiff may access her property at both ends of her U-shaped driveway. The court also interpreted the easement as requiring defendants to maintain an electronic gate at the entrance of their driveway. Consistent with its *220 declaration regarding the easement, the court ruled in plaintiff's favor on her breach of easement claim, specifically as it pertained to the fence that defendants had built (with only one opening) and the electronic gate that they had removed. The court ordered defendants to remove any sections of the fence necessary "to restore [p]laintiff's full access to both legs of her U-shaped driveway," to "immediately restore" the electronic gate, and to share the maintenance costs of the electronic gate equally with plaintiff going forward.
Defendants appeal, and plaintiff cross-appeals, from that judgment. As previously stated, we write to address only the issue of the electronic gate, which is the subject of defendants' second assignment of error. For purposes of that issue, the relevant portion of the easement document is the first paragraph of the easement: "Access for ingress + egress over + across the driveway for 4965 [Street Name], to 4963 [Street Name]. Along with Remote control + code for gate."[3]
As they did in the trial court, defendants argue on appeal that the grant of easement cannot be read as requiring them to maintain an electronic gate at the entrance of their driveway in perpetuity, but rather only as requiring them to provide gate access to plaintiff so long as a gate exists. Plaintiff responds that, although the language of the easement could have been more precise, Spickler's intent is "clear enough" when one considers all of the evidence. Citing Fitzstephens v. Watson et al. , 218 Or. 185, 344 P.2d 221 (1959), plaintiff emphasizes that, while most easements are restrictive or negative in nature, it is possible for easements to impose affirmative obligations.
The trial court ruled in plaintiff's favor on the issue of the electronic gate. It explained its reasoning in its written opinion after trial:
"Lastly there are some unusual items and issues raised in the easement relating to the gate [and] the power supply for the gate ***. I agree with defendants' counsel that there will be no obligation for defendants to provide *221 electricity or to maintain the electric gate for the benefit of the plaintiff. I agree with plaintiff, however, that the gate as contemplated was the gate at the driveway's confluence with [the main road]. While the defendants are not obligated to maintain the gate beyond their use thereof, they were also not entitled to remove the gate from its location. That has eliminated the security for plaintiff. Plaintiff is entitled to maintain the gate and have it electrically operated. Defendants are not entitled to take it down or otherwise interfere with the operation, power access, or the like. Defendants are ordered to reinstall a gate assembly that can be properly and satisfactorily operated electrically and power access restored. *35 "If the parties are going to share operation of the gate presumably they will also share cost though that is not an issue before the court. If plaintiff is going to maintain the gate herself and the gate is not shared she will need to resolve issues with regard to power, payment, connection to the utility, etc. I do not order that defendants must support power from their own service to the gate if the gate is not shared. If new power connections etc. are necessary, that will be at plaintiff's cost though she has an easement allowing her reasonable access for that purpose and for the electric gate."
In a subsequent opinion addressing defendants' objections to the form of judgment submitted by plaintiff, the court further stated:
"The easement mentions that [plaintiff] would have access for a remote control and code for the gate. * * * [B]ased upon the testimony of the parties, the usage made of the gate and its location I concluded from the evidence that a gate could be maintained by [plaintiff] at this location, and could not be removed by the defendants. I have concluded what else could be meant by that? A temporary device to be removed or otherwise discarded? [Defendants'] logic would have the servient tenement remove the gate, not replace it, and assert that with no gate there is no duty to provide the code!"
Finally, in the general judgment, the court articulated its final ruling on the electronic gate. It ordered defendants to "immediately restore, at Defendants' sole expense, an electrically operated privacy gate, of substantially *222 similar size, configuration and quality, as the gate that previously existed at the entrance from/to [the main road] until approximately 2010 when it was removed by Defendants." The court also ordered defendants to restore power to the gate and make it operational, after which defendants and plaintiff would share equally the cost of maintaining the gate.
The interpretation of an express easement is a question of law. Bloomfield v. Weakland , 224 Or. App. 433, 446, 199 P.3d 318 (2008), rev. den. , 346 Or. 115, 205 P.3d 887 (2009). "In construing an easement, our fundamental task is to discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner." Watson v. Banducci , 158 Or. App. 223, 230, 973 P.2d 395 (1999). "In giving effect to an easement's purpose, general principles of reasonableness control." Id. at 231, 973 P.2d 395. Ordinarily, an easement grantee has only "those rights that are necessary for the easement's reasonable and proper enjoyment." Id. (citing Miller v. Vaughn , 8 Or. 333, 336 (1880) ). The grantor otherwise retains "full dominion and use of the land." Id. "The parties' respective rights of use and enjoyment are limited beyond those general principles only if the written document itself expressly and unequivocally imposes some greater restriction on or reservation of rights, or if extrinsic evidence shows that the original parties to the easement intended some further restriction of the parties' rights." Id.
When interpreting an express easement, the court must "look first to the words of the easement, viewing them in the context of the entire document." Kell v. Oppenlander , 154 Or. App. 422, 426, 961 P.2d 861 (1998). The document also must be considered in the context of "the circumstances under which it was made, including the situation of the subject and of the parties," so that "the judge is placed in the position of those whose language the judge is interpreting." Miller v. Jones , 256 Or. App. 392, 397, 302 P.3d 812 (2013) (quoting ORS 42.220 ). If the words of the easement in context "clearly express the easement's purpose, our analysis ends." Watson , 158 Or. App. at 230, 973 P.2d 395. If ambiguity remains, we consider "extrinsic evidence of the original parties' intent." Id. If ambiguity still remains, we employ relevant maxims of construction as a last resort.
*223 Cascade v. Georgia-Pacific , 259 Or. App. 348, 366, 314 P.3d 311 (2013), rev. den. , 355 Or. 142, 326 P.3d 1207 (2014).
Here, interpreting the words of plaintiff's easement in the context of the entire document and the circumstances in which it was made, we conclude that the easement document is unambiguous regarding the electronic *36 gate. Specifically, for the reasons that follow, we conclude that defendants must provide plaintiff with a remote control and key code for the gate so long as a gate exists, but that the easement document does not impose any affirmative obligation on defendants to maintain an electronic gate in perpetuity.
The first line of the easement clearly states its purpose: to provide plaintiff with "[a]ccess for ingress + egress" to her property. The second line, "Along with remote control + code for gate," must be read in conjunction with the first. Indeed, the structure of the paragraph makes the second line dependent on the first for meaning. Read in context, the purpose of the easement is to provide ingress and egress to plaintiff's property over and across defendants' driveway. The gate provision facilitates that stated purpose by ensuring that plaintiff has means to get through the existing gate. Otherwise, the gate would prevent plaintiff from the reasonable use and enjoyment of the easement, i.e. , would prevent ingress and egress to her property. Referencing the gate in the easement document also avoids any suggestion that the gate interferes with the easement. See Ericsson v. Braukman , 111 Or. App. 57, 63, 824 P.2d 1174, rev. den. , 313 Or. 210, 830 P.2d 595, 596 (1992) ("Generally, courts hold that a locked gate constitutes an unreasonable interference with the use of the easement, even though the dominant owner is furnished a key."). When a gate is permitted, providing a key is typically a minimum requirement. E.g. , id. ; Watson , 158 Or. App. at 234-35, 973 P.2d 395 (same).
Here, the easement document specifies the type of keys to be provided for an existing gate: a remote control and the key code. Requiring defendants to provide keys to an existing gate, however, does not mean that defendants are legally obligated to maintain that gate or any gate in perpetuity. A gate is not necessary for plaintiff to enjoy her *224 ingress and egress rights, which is the stated purpose of the easement. See Watson , 158 Or. App. at 231, 973 P.2d 395. Plaintiff may feel that an electronic gate is important for personal security reasons-and the trial court expressly recognized "security" as the purpose of the previously existing gate-but there is nothing in the easement document that suggests that security is a purpose of the easement.[4]
More pointedly, the easement document says nothing about the servient estate being required to maintain an electronic gate. While it is true, as plaintiff argues, that an easement may impose affirmative obligations in some cases, this case is very different from the Fitzstephens case on which plaintiff relies. In Fitzstephens , the grantors of an easement expressly covenanted that they and their heirs or assigns "will maintain a reservoir on the property now known as the Davies Ranch and a pipe line leading from the said premises to the above described premises owned by the grantees" and "will furnish to the grantees, their heirs or assigns, water" through that pipe. 218 Or. at 191, 344 P.2d 221. Here, there is no mention in the easement document of an obligation on the part of defendants to maintain an electronic gate, let alone an express promise to do so in perpetuity.
As for extrinsic evidence, the trial court alluded to the parties' testimony as being relevant to its ruling, and plaintiff argues that the evidence shows Spickler's original intent regarding the gate. However, plaintiff provides no citation to any actual evidence in the record on this issue. Cf. Tidewater v. Wheeler , 55 Or. App. 497, 502, 638 P.2d 499, rev. den. , 292 Or. 722, 644 P.2d 1131 (1982) ("We are not required to search the record for the evidence to support defendants' assignments of error, and we will not do it."). The only evidence that has been brought to our attention is by defendants, who, in the summary of facts in their opening brief, provide citations to a portion of the record in which plaintiff testified that the electronic gate "functioned as security" for both her and her mother's houses, that it was "important to her," and that she "expected" the *37 gate to stay there and therefore asked for *225 the code and remote control in case defendants changed it. That testimony may establish that plaintiff liked the gate and "expected" it to remain in place, but it does not establish that the easement was intended to impose a permanent, affirmative obligation on the servient estate to maintain an electronic gate.
The trial court's attempt to divide up responsibility for various aspects of the electronic gate is telling. Although smoothed out in the judgment, the court's struggle to fashion rights and obligations for each party without guidance from the easement document is apparent, especially in its written opinion after trial. That struggle is a reflection of the fact that the easement document says nothing about defendants having an obligation to maintain a gate at the entrance of their driveway or about plaintiff having a right to maintain a gate on defendants' property. The easement document creates no such obligation or right. Although it requires defendants to allow plaintiff ingress and egress to her property over and across their driveway, it does not require defendants to maintain an electronic gate. When the gate that existed at the granting of the easement was removed, the obligation to provide keys to it necessarily ended as well.
Accordingly, the trial court erred when it declared that plaintiffs' easement requires defendants to maintain an electronic gate at the entrance of their driveway (paragraph 1.D. of the general judgment) and when it ordered defendants to reinstall an electronic gate (paragraph 1.A. of the general judgment).
On appeal, declaratory judgment reversed in part and remanded with instructions to enter judgment declaring the rights of the parties in accordance with this opinion; judgment on plaintiff's breach of easement claim reversed in part; otherwise affirmed. On cross-appeal, affirmed.

On cross-appeal, plaintiff requests that we exercise our discretion to conduct de novo review. We decline to do so. See ORS 19.415(3)(b) (giving the Court of Appeals "sole discretion" on this issue); ORAP 5.40(8)(c) (limiting de novo review to "exceptional" cases).

Based on the record, it appears that defendants' driveway is a short distance from the shared property line and that, at each leg of plaintiff's unpaved U-shaped driveway, a short unpaved stretch connects plaintiff's driveway to defendant's driveway. That detail is irrelevant for purposes of appeal but may help for reading the map.

The second paragraph of the easement grants an easement related to irrigation. The irrigation easement is not at issue on appeal, and neither party argues that the second paragraph aids interpretation of the first, so our discussion is limited to the first paragraph.

Nothing appears to prevent plaintiff from installing her own gates at the legs of her driveway, i.e. , at the openings in defendants' fence that provide ingress and egress to her property, if she desires that security. Plaintiff's counsel acknowledged at oral argument that the only impediment to doing so is cost.