Argued and submitted November 9, 2020, affirmed June 30, 2021

PISTOL RESOURCES, LLC,
an Oregon limited liability company,
*Plaintiff-Respondent,*

*v.*

Jody L. McNEELY,
an individual and
Ted McNeely, an individual,
*Defendants-Appellants.*

Curry County Circuit Court
17CV24695; A169420

496 P3d 28

In this case concerning an easement agreement, defendants appeal a judgment granting relief to plaintiff. On appeal, defendants argue that the trial court erred in determining that plaintiff's breaches of the easement agreement were not material and in declaring that the easement did not require plaintiff to repair plaintiff's bridge or roads. *Held*: After considering the object of the easement agreement and the circumstances set forth in *Restatement (Second) of Contracts* section 241 (1981), the Court of Appeals determined that the trial court did not err in determining that plaintiff's breaches of the easement agreement were not material. Further, the court determined that the trial court did not err in declaring that the easement agreement did not require plaintiff to repair its bridge or roads.

Affirmed.

Cynthia Lynnae Beaman, Judge.

Bruce Cully Moore argued the cause and filed the briefs for appellants.

Sara Kobak argued the cause for respondent. Also on the brief were Sara C. Cotton and Schwabe, Williamson & Wyatt, P.C.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Affirmed.

**TOOKEY, J.**

In this case related to forest management, the trial court granted plaintiff, Pistol Resources, LLC (Pistol), declaratory relief relating to an easement agreement about which Pistol and defendants, Jody McNeely and Ted McNeely, were at loggerheads.[1] Pistol and the McNeelys are owners of certain "intermingled forest land" in Curry County, Oregon, and the easement agreement grants each party the right to use the roads on the other's land. As detailed below, the McNeelys purported to terminate the easement agreement due to alleged breaches of that agreement by Pistol.

After a bench trial, the trial court determined that, although Pistol had breached the easement agreement, its breaches were not material, and, therefore, the McNeelys' purported termination of the easement agreement was ineffective. The trial court also determined that the easement agreement did not require Pistol to "maintain its road or bridge for use by" the McNeelys. The McNeelys appeal the judgment resulting from those determinations.

On appeal, in their first assignment and second assignments of error, we understand the McNeelys to contend that the trial court erred in granting Pistol the declaratory relief that it sought in its complaint. In pressing those assignments, the McNeelys argue that the trial court erred in "concluding that [Pistol's] breaches of the easement were not material" and that the trial court erred in "declaring that the easement did not require [Pistol] to repair" its bridge or roads.

For the reasons that follow, we affirm.[2]

---

[1] At the outset, we note that the judgment in the trial court was entered against both McNeelys and awarded relief to both McNeelys, and both McNeelys appeal that judgment. The briefing on appeal at times makes distinctions between the McNeelys. For ease of reference, however, and because it does not change our analysis, in this opinion we will at times refer to Mr. McNeely or Ms. McNeely (or both) simply as "the McNeelys."

[2] The McNeelys' first and second assignments of error also reference the trial court's denial of their motion for a directed verdict. Our analysis in this opinion obviates the need to separately address whether the trial court erred in denying the McNeelys' motion for a directed verdict.

In a third and fourth assignment of error, the McNeelys contend that "[t]he trial court erred in failing to determine from the evidence that [Pistol] was estopped from asserting that it had no obligation to repair the bridge," and that

## I.  FACTUAL AND PROCEDURAL HISTORY

"In reviewing a trial court's determinations following a bench trial, we review the trial court's explicit and implicit findings of fact for any evidence in the record to support them, and the legal consequences of those facts for legal error." *Grimstad v. Knudsen*, 283 Or App 28, 31, 386 P3d 649 (2016), *rev den*, 361 Or 350 (2017) (internal quotation marks and brackets omitted). We state the facts in accordance with that standard.

### A.  *The Easement Agreement*

In 1981, the McNeelys' and Pistol's predecessors in interest—Crockett and Agnew, respectively—entered into the easement agreement that is at issue in this case. The recitals in the easement agreement state that the parties to the agreement are "owners of certain intermingled forest lands" in Curry County, Oregon, and that the parties "desire[] to obtain the right to use the existing roads and to construct and use roads across lands of the other for forest management purposes and for the purpose of transporting logs and other forest products, agricultural products, and minerals." The recitals further state that the parties "desire to grant, one to the other, such rights, upon and subject to the terms and conditions" stated in the easement agreement.

Section 1 and section 2 of the easement agreement contain granting language effectuating the goal expressed

_____

"[t]he trial court erred in failing to determine that [Pistol] was barred from the equitable declaratory relief under the Unclean Hands Doctrine." We reject those assignments of error without further discussion.

We also pause to note that "ORAP 5.45(3) requires that 'each assignment of error shall identify precisely the legal, procedural, factual, or other *ruling* that is being challenged.'" *Justice and Crum*, 265 Or App 635, 638 n 1, 337 P3d 840 (2014) (brackets omitted; emphasis in *Justice*). "A brief that challenges only specific factual findings or legal conclusions does not meet that requirement." *Id.*

Finally, we note that the McNeelys also filed a first and second amended notice of appeal in which they appeal two post-judgment orders awarding attorney fees and costs. Additionally, in a third amended notice of appeal, the McNeelys appeal a Supplemental Judgment and Money Award for Attorney Fees and Costs. But the McNeelys raise no assignments of error concerning either the orders awarding attorney fees and costs or the supplemental judgment. In light of our disposition in this case, we do not address the orders or supplemental judgment further.

by the parties in the recitals to the easement agreement. Section 1 of the easement agreement provides that

> "Agnew does hereby grant and convey to Crockett[] the perpetual nonexclusive right, privilege and easement, *at Crockett's sole cost, risk and expense*, to use, improve and maintain any roads now or hereafter existing, and the perpetual nonexclusive right, privilege and easement to construct new roads for all purposes related to timber or timberlands or mining, including without limitation, timber management, and the removal of forest, agricultural or mineral products upon, over or across [certain land owned by Agnew] in Curry County, Oregon."

(Emphasis added.)

Conversely, section 2 of the easement agreement provides that

> "Crockett does hereby grant to Agnew the perpetual nonexclusive right, privilege and easement, *at Agnew's sole cost, risk and expense*, to use, improve and maintain any roads now or hereafter existing, and the perpetual nonexclusive right, privilege and easement to construct new roads for all purposes related to timber or timberlands or mining, including without limitation, timber management, and the removal of forest, agricultural or mineral products upon, over or across [certain land owned by Crockett] situated in Curry County, Oregon."

(Emphasis added.)

The easement agreement additionally obligates each landowner to pay certain "use fees" for the transportation of forest products or minerals over the land of the other. Specifically, section 3 of the easement agreement states:

> "It is understood and agreed that * * * no further consideration shall be paid one to the other, other than for the transportation of forest products or minerals other than rock for which either party shall pay the other for the transportation thereof, a use fee based upon the following rate schedule, to-wit:
>
> "$ .30/MBF net Scribner sale for those products sold on a scale basis;

"$1.00/load for those hardwoods or other products customarily sold on a weight basis.

"$1.00/load for all minerals other than rock."

Section 3 also requires that all "use fee payments shall be made on the 10th day of each month for products hauled during the previous calendar month" and that "scale tickets or weight receipts [are] to be furnished by the user with such payment."

Section 6 of the easement agreement provides for certain maintenance and repair responsibilities—to wit:

"Except as otherwise expressly provided herein, neither party shall have any obligation to maintain any roads for the benefit of the other. During any periods of road use each user shall maintain the road or roads in condition satisfactory for log hauling, and at the completion of any period of use shall repair all damage to and deterioration of the road caused by the exercise of his rights hereunder, shall clean up and remove all debris and shall leave the roads and ditches clear and generally in a condition as good as that existing at the time of the commencement of such use.

"In the event all or any portion of the road is used by more than one party at the same time, the cost of maintenance on account of such use shall be allocated between the parties in proportion to their respective use as determined by the volume of forest or other products hauled over the road.

"Either party shall have the right to suspend use of any road on his own land when, in his judgment, such action is desirable because of excessive risk of fire or damage to the road surface due to soil conditions, but any such suspension shall apply equally to the party suspending such use."

Finally, the easement agreement contains a termination provision in section 11, which provides:

"In the event either party fails to perform or comply with any provision hereof and such failure continues for thirty (30) days after receipt from the other party of notice in writing specifying such failure and demanding its cure, the non-defaulting party may at his option cancel this Agreement or suspend the defaulting party's rights hereunder until the default is cured in either event without

prejudice to any other remedy which may be available under applicable laws."[3]

B.  *The McNeelys, Pistol, and the Present Dispute*

The McNeelys and Pistol are the current owners of the "intermingled forest land" in Curry County, Oregon, referenced in the easement agreement: the McNeelys taking ownership in 2000 from a third party, Hitner, who took ownership from Crockett, and Pistol taking ownership from its parent company, South Coast Lumber Co., who took ownership of the parcels previously owned by Agnew as a result of two purchases, one in 1989 and one in 1991. A map reflecting the McNeelys' and Pistol's respective interests was entered into evidence in the trial court and is included as an Appendix to this opinion.

As explained below, the crux of the dispute in this case relates to a bridge crossing the Pistol River which, as reflected in the Appendix, is situated entirely on Pistol's property. The McNeelys historically have used the bridge to access the approximately 400 acres of property that they own north of the Pistol River, as also reflected in the Appendix. The bridge was constructed shortly after Crockett and Agnew entered into the easement agreement.

In 2008, the bridge became impassible for anything other than foot traffic or possibly all-terrain vehicles, and the parties now dispute who is responsible for the repair and maintenance of the bridge under the easement agreement: The McNeelys contend that Pistol is responsible for repair and maintenance of the bridge, while Pistol, for its part, contends it has no such obligation. They also dispute who has the duty to repair certain roads on Pistol's property approaching the bridge from both the north and the south. In their briefing, the McNeelys refer to such roads as the "Subject Roads," which is a nomenclature that we will adopt for the rest of this opinion. The Subject Roads and the bridge had been damaged in part by a lack of maintenance.

---

[3] The easement agreement contains numerous other provisions—for example, a provision requiring each landowner to give at least 10-days advance written notice before using the other's road and setting forth certain requirements for the construction of new roads on the other's land.

The dispute in this case also concerns Pistol's historical failure to pay the use fees and provide the scale tickets or weight receipts required by section 3 of the easement agreement.

In a letter dated April 28, 2016, which was received by Pistol on May 9, 2016, Ms. McNeely informed Pistol that, in the McNeelys' view, Pistol was in breach of the easement agreement for several reasons. Among those reasons, and as relevant to this appeal, Ms. McNeely contended that Pistol had failed to provide scale tickets and weight receipts and had failed to pay the use fees required by section 3 of the easement agreement. Ms. McNeely also contended that section 6 of the easement agreement "calls for the maintenance of the roads as determined by the volume of the forest or other products hauled over the road by a Party"; that "South Coast Lumber or their prior owners are the only Party to haul across the roads going to the rail car bridge crossing on Pistol River and accessing lands on the north side"; that the Subject Roads and the bridge have "received little, if any maintenance, for many years"; and that the bridge was in danger of falling into the river. Ms. McNeely's letter concluded by stating that, pursuant to section 11 of the easement agreement, she demanded that Pistol cure its failures to perform, and that she would "cancel or suspend" the easement agreement if the breaches were not cured within 30 days after receipt of the letter.

In a letter dated June 9, 2016, Pistol responded to the McNeelys. In its response, Pistol demanded that the McNeelys not cancel or suspend the easement agreement.

About use fees, Pistol agreed that the McNeelys were owed "historical use fees" under section 3 of the easement agreement, acknowledged that Pistol had "hauled forest products across McNeely lands encumbered by the Easement Agreement" since the McNeelys acquired the lands in 2000, and stated that the failure to pay use fees was "not an intentional omission." Pistol's response attached an accounting reflecting the number of "MBF" and "hardwood" loads hauled across the McNeelys' land since 2000, and that the use fees owed as a result of Pistol's use of the McNeelys' land totaled $3,366.71. Pistol offered to pay the

McNeelys that amount "in the manner [that the McNeelys'] desire (*e.g.*, wire transfer or check)" and requested that the McNeelys inform Pistol how they would like to receive the payment.

About whether section 6 of the easement agreement required Pistol to maintain and repair the bridge and Subject Roads, Pistol took the position that "Section 6 merely requires that a party who is alone using the other party's road must solely repair and maintain the road in question at its sole cost, or share in costs in a proportionate manner based on respective uses if both parties are then using the road," and noted that under section 1, the "easement grant to *** Crockett *** was at 'Crockett's sole cost, risk and expense, to use, improve and maintain' the roads on Agnew lands then existing or existing in the future."

Ms. McNeely responded to Pistol in a letter dated July 8, 2016, in which she purported to "cancel" the easement agreement due to Pistol's "failure to perform or comply with provisions of the 'easement agreement.'" In that letter, Ms. McNeely did not indicate how she would like to receive payment from Pistol, nor did she request an accounting of the use fees in any form other than that which Pistol had provided.

C. *The Instant Litigation*

Following Ms. McNeely's letter of July 8, 2016, Pistol filed a complaint against the McNeelys seeking a judgment "declaring that (1) the Easement has not been terminated, (2) the Easement does not require Pistol to maintain its roads and bridge for use by [the McNeelys], and (3) the Easement continues in full force and effect," as well as (4) any "other relief the court finds just and equitable."

In their answer and counterclaims, the McNeelys alleged that Pistol had materially breached the easement agreement by, as relevant here, "[f]ailing to pay [the McNeelys] use fees on the 10th day of each month for products hauled during the previous calendar month," "[f]ailing to provide [the McNeelys] with scale tickets or weight receipts on the 10th day of each month for products hauled during the previous calendar month," and "[f]ailing to repair

and maintain the roads and the rail car bridge in the manner required by the easement."

In their first counterclaim, the McNeelys contended that, as a result of those purported material breaches, the McNeelys were entitled to a judgment declaring, among other things, that the "Easement has been terminated" and that Pistol is "required to maintain the * * * bridge and roads as provided in the Easement." In their second counterclaim, the McNeelys alleged that Pistol breached the easement agreement by, as relevant here, "failing and refusing to pay the use fees" and failing to provide the McNeelys the required "scale tickets or weight receipts."

After a bench trial, the trial court issued a letter opinion. In that opinion, the trial court noted that, in making its ruling, it was "specifically considering the stated purpose of the agreement that, 'each of the parties desires to obtain the right to use the existing roads and to construct and use roads across lands of the other for forest management purposes and for the purpose of transporting logs and other forest products, agricultural products, and minerals.'"

After discussion of sections 1, 2, and 6 of the easement agreement, the trial court determined, with regard to the obligation of the parties to maintain and repair roads and bridges:

> "The language of the agreement is unambiguous that neither party has to maintain their own roads for the benefit of the other. Each party must maintain the other's road when exercising the rights under the agreement to 'use, improve and maintain any roads now or hereafter existing' (or to construct new roads, which is inapplicable to this case,) across the other's land, in a condition satisfactory for log hauling if during any period of use, any damage or deterioration is caused by the use. In that case, the user must return the road into the condition as good as existed at the time the use began. It is unfortunate that the damage to the bridge was due to the deferred maintenance and natural causes such as the change of the river bank due to rain and erosion, and issues with culverts getting plugged from annual weather patterns, but the damage itself did not trigger anyone's obligation to repair."

The court thus determined that Pistol "did not have the obligation to repair the road," including the bridge, and was "not in breach of contract for that reason."

With regard to the McNeelys' breach of contract claim premised on Pistol's failure to pay use fees and supply scale tickets or weight receipts, the court noted that Pistol "admitted at trial that [it] had never paid use fees to [the McNeelys] as required by paragraph 3 of the agreement." The trial court determined, however, that the breach was "immaterial." In so determining, the court noted, among other points, that neither party "had ever paid these fees during the course of their respective ownership of their parcels"; that Mr. McNeely "was aware that [Pistol] owed him money over the years for use of the roads for log hauling, yet he never made a demand for payment" until Ms. McNeely's 2016 letter, at which point the demand was for "use fees attributed to 16 years of log hauling"; that Pistol "did not deny that the amount was due at the time of the demand"; that upon receiving the demand, Pistol's Timber Department Manager "contacted his accounting department and requested the volume hauled, created a spreadsheet, and made arrangements to pay the fees"; that Pistol sent the McNeelys a letter dated June 9, 2016—one day after the 30-day cure period provided for in section 6 had expired—attaching an accounting for the use fees and requesting that the McNeelys advise Pistol on how they wanted to receive payment; that "the money itself is minimal, $942.00, given the primary purpose of the agreement (to cross each other's lands) and the value and importance of the easement to both parties"[4]; and that the McNeelys "received the assurance from [Pistol] that the fees would be accounted for in the future." The trial court further noted that the McNeelys "received the accounting late, but not so unreasonably late as to cancel this entire agreement."

The trial court then entered a judgment granting Pistol's request for a declaratory judgment and declaring that (1) the easement "has not been terminated" and

---

[4] As noted above, the accounting attached to Pistol's June 9, 2016, letter reflected unpaid use fees totaling $3,366.71 since the McNeelys acquired the property in 2000. The trial court determined, however, that "fees from prior to 2011 are barred from recovery by the statute of limitations."

"continues in full force and effect"; (2) the easement "does not require [Pistol] to maintain its road or bridge for the use by [the McNeelys]"; and (3) Pistol "has not committed any material breach of the easement." Additionally, the trial court dismissed the McNeelys' first counterclaim, but also awarded Ms. McNeely declaratory relief that Pistol "defaulted in its obligations" under the easement. With respect to the McNeelys' second counterclaim—breach of contract—the trial court awarded the McNeelys $942.00 in damages for unpaid use fees due to Pistol's "immaterial breach of contract"—*i.e.*, its failure to pay and account for use fees as specified in the easement agreement.

## II.   ANALYSIS

A.   *Whether the Trial Court Erred in Determining that Pistol's Failure to Pay Use Fees and Provide the Required Documents Was a Material Breach*

As noted above, the trial court determined that Pistol's breach of the easement agreement by failure to pay and account for use fees was "immaterial." The McNeelys contend that the trial court erred in "concluding that [Pistol's] breaches of the easement were not material." The McNeelys seek "a reversal of the trial court's decision that the contract breaches by [Pistol] were not material."

"Whether a breach is material is a question for the factfinder unless the uncontested evidence leads to only one legal conclusion." *Johnstone v. Zimmer*, 191 Or App 26, 34, 81 P3d 92 (2003). "A breach is material if it goes to the very substance of the contract and defeats the object of the parties entering into the contract." *Kim v. Park*, 192 Or App 365, 370, 86 P3d 63 (2004), *rev den*, 338 Or 16 (2005) (internal quotation marks omitted). "Terms that are material to one kind of contract are not necessarily material to another kind of contract." *Dalton v. Robert Jahn Corp.*, 209 Or App 120, 142, 146 P3d 399 (2006), *rev den*, 342 Or 416 (2007); *see also Restatement (Second) of Contracts* § 241 comment b (1981) (noting that, "[i]n construction contracts, for example, defects affecting structural soundness are ordinarily regarded as particularly significant" and that "[i]n the sale of goods a particularly exacting standard has evolved").

In determining whether a breach is material, we have previously considered the circumstances set forth in the *Restatement* section 241. *Pollock v. D. R. Horton, Inc. - Portland*, 190 Or App 1, 17, 77 P3d 1120 (2003); *see also Venture Properties, Inc. v. Parker*, 223 Or App 321, 353-54, 195 P3d 470 (2008) (noting the *Restatement* "criteria" as the criteria under which we "assess" materiality). That section provides:

> "In determining whether a failure to render or offer performance is material, the following circumstances are significant:
>
> "(a)   the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> "(b)   the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> "(c)   the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> "(d)   the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> "(e)   the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

*Restatement* § 241.

In this case, in our view, the trial court did not err in determining that Pistol's breach of section 3 of the easement agreement was immaterial, particularly in light of the other determinations that it made.

As an initial matter, we note that the trial court determined that the "primary purpose" of the easement agreement in this case—that is, the "object" of the parties who entered the agreement—was to "cross each other's lands." That determination is supported by evidence in the record, and in particular, the recitals in the easement agreement itself, which indicate that the agreement was entered into because the parties desired "to obtain the right to use the existing roads and to construct and use roads across lands of the other for forest management purposes and for

the purpose of transporting logs and other forest products, agricultural products and minerals" and desired to "grant, one to the other, such rights." *Sander v. Nicholson*, 306 Or App 167, 174, 473 P3d 1113, *rev den*, 367 Or 290 (2020) ("[W]ith respect to expressly created easement rights * * * the terms of the granting instrument, if unambiguous, define the * * * intended purpose of the easement." (Internal quotation marks omitted.)).

That the primary purpose of the easement agreement was to "cross each other's lands" suggests that the breach at issue in this case—failure to pay use fees and provide scale tickets or weight receipts—is not one that "goes to the very substance of the contract and defeats the object of the parties entering into the contract." *Kim*, 192 Or App at 370. Were it otherwise, presumably, Mr. McNeely, who, as the trial court stated, "was aware that [Pistol] owed him money over the years for use of the roads for log hauling," would have made a demand for such payment at some point prior to Ms. McNeely's 2016 letter.[5]

Consideration of the circumstances set forth in the *Restatement*, coupled with the trial court's findings, also support the trial court's determination regarding materiality.

Turning to the first two circumstances—"the extent to which the injured party will be deprived of the benefit which he reasonably expected" and "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived"— Pistol's breach deprived the McNeelys of a benefit they were entitled to receive under the easement agreement. But that benefit—$942.00—as the trial court found, was "minimal," given "the value and importance of the easement to both parties." Further, the McNeelys can be "adequately

---

[5] Citing Mr. McNeely's testimony, on appeal the McNeelys contend that Mr. McNeely "had raised the non-payment issue with different Pistol employees over the years," including with Pistol's Timber Department Manager. Pistol's Timber Department Manager, however, testified that Mr. McNeely never demanded the use fees owing under the easement agreement during any of his interactions with Mr. McNeely, and that the first time there was "mention" of the easement agreement was when Pistol received Ms. McNeely's 2016 letter. In light of the trial court's express findings of fact and our standard of review, we understand the trial court not to have credited that aspect of Mr. McNeely's testimony.

compensated" for that breach via a claim for damages.[6] *Restatement* § 241 comment c (explaining that "[i]f the failure is a breach, the injured party always has a claim for damages, and the question becomes one of the adequacy of that claim to compensate him for the lost benefit").[7]

With regard to the third circumstance set forth in the *Restatement*—"the extent to which the party failing to perform or to offer to perform will suffer forfeiture"— consideration of that circumstance supports the trial court's determination that Pistol's breaches of the easement agreement were not material.

Consideration of the final two circumstances set forth in the *Restatement*—"the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances" and "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing"—also provide support for the trial court's determination that the breaches in this case were not material. Here, as the trial court determined, when Pistol received the demand from the McNeelys regarding the use fees and scale tickets and weight receipts, Pistol "did not deny that the amount was due," calculated the use fees owed, provided that calculation to the McNeelys, and requested information concerning how the McNeelys would like to receive payment. Further, as the trial court determined, the McNeelys "received the assurance from [Pistol] that the fees would be accounted for in the future."

---

[6] Given the facts of this case, we do not view as particularly salient the circumstance that the McNeelys were barred by the applicable statute of limitations from recovering $2,424.71 of the $3,366.71 they were owed. As noted above, upon receiving the McNeelys' demand, Pistol offered to pay the McNeelys the entire amount owed under section 3 of the easement agreement, and the McNeelys' response was to purport to cancel the easement agreement, rather than directing Pistol as to how they would like to receive payment.

[7] The *Restatement* notes that the circumstance described in subsection (b), "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived," is a "corollary" of the circumstance described in subsection (a), "the extent to which the injured party will be deprived of the benefit which he reasonably expected." *Restatement* § 241 comment c.

Finally we note that, although Pistol sent the accounting one day after expiration of the 30-day cure period established in section 11, given the circumstances of this case, we cannot say that the trial court erred in determining that the accounting was "not so unreasonably late as to cancel this entire agreement."[8]

In sum, we reject the McNeelys' argument that the trial court erred when it determined that Pistol's breaches of the easement agreement were not material.

B. *Whether the Trial Court Erred in Determining Pistol Did Not Breach the Easement Agreement by Failing to Maintain and Repair the Bridge and Subject Roads*

As noted above, the trial court determined that "the language of the [easement] agreement is unambiguous that neither party has to maintain their own roads for the benefit of the other"; that each party "must maintain the other's road when exercising the rights under the agreement to 'use, improve and maintain any roads now or hereafter existing' *** in a condition satisfactory for log hauling if during any period of use, any damage or deterioration is caused by the use"; and that, in that case, "the user must return the road into the condition as good as existed at the time the use

_____

[8] In arguing that we should reach a contrary result, the McNeelys contend that the trial court "confused the default dates with the termination date." We understand the McNeelys' argument to be that the trial court incorrectly focused on Pistol's June 9, 2016, response to Ms. McNeely's letter, which was one day after the cure period triggered by Ms. McNeely's letter, rather than the age of the defaults themselves, which were, according the McNeelys, "1 to 12 years old." We, however, understand the trial court's comment regarding Pistol's response to Ms. McNeely's letter being "not so unreasonably late" as, in essence, the trial court giving consideration to whether Pistol's actions comported with principals of good faith and fair dealing, rather than reflecting any confusion on the part of the trial court.

Additionally, the McNeelys contend that "[t]he evidence in this case is that the accounting documents required by the Easement"—*i.e.*, "scale tickets or weight receipts"—were never provided. We note that Pistol, in response to the McNeelys' letter notifying Pistol that the McNeelys believed that Pistol was in breach of the easement agreement, provided an accounting detailing number of loads hauled over the McNeelys' land, the use fees owed, and offered to pay such use fees. The McNeelys did not thereafter request "scale tickets or weight receipts" to substantiate the information provided by Pistol in its accounting. Instead, the McNeelys purported to cancel the easement agreement. In such circumstance, the trial court did not err in determining that Pistol's failure to provide "scale tickets or weight receipts" was not a material breach of the easement agreement.

began." The trial court then entered a judgment declaring that the easement agreement "does not require [Pistol] to maintain its road or bridge for the use by" the McNeelys.

The McNeelys contend that the trial court erred in "declaring that the easement did not require [Pistol] to repair the Bridge and Subject Roads." In the McNeelys' view, under section 6 of the easement agreement, "Pistol had the sole obligation to repair the Subject Road" and bridge, and that the facts reflect that "Pistol failed to maintain the Subject Road [and bridge] in a condition suitable for log hauling."[9]

"The interpretation of an express easement is a question of law." *Tressel v. Williams*, 291 Or App 215, 222, 420 P3d 31 (2018). "In construing an easement, our fundamental task is to discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner." *Id.* (internal quotation marks omitted). "In giving effect to an easement's purpose, general principles of reasonableness control." *Id.* (internal quotation marks omitted).

"[W]hen interpreting an express easement, the court must look first to the words of the easement, viewing them in the context of the entire document." *Id.* (internal quotation marks omitted). "If the words of the easement in context clearly express the easement's purpose, our analysis ends." *Id.* (internal quotation marks omitted). "If ambiguity remains, we consider extrinsic evidence of the original parties' intent." *Id.* (internal quotation marks omitted). "If ambiguity still remains, we employ relevant maxims of construction as a last resort." *Id.* (internal quotation marks omitted).[10]

---

[9] The McNeelys also contend that, even if "there is no express language [in the easement agreement] obligating [Pistol] to repair, maintain, clear and clean" the bridge and adjoining roads on Pistol's land, Oregon law "establishes th[at] duty." We reject that argument without further discussion.

[10] Of course, extrinsic evidence of the circumstances of contract formation may be considered in the initial inquiry into whether the terms of a contract are ambiguous, to put the judge in the shoes of the parties. *See* ORS 41.740; *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 314, 129 P3d 773, *rev den*, 341 Or 366 (2006). The same is true when interpreting an express easement. *Bloomfield v. Weakland*, 224 Or App 433, 447, 199 P3d 318 (2008), *rev den*, 346 Or 115 (2009).

In this case, we conclude that the trial court did not err when interpreting the easement and in determining that Pistol had no duty to repair the bridge and Subject Roads.

Preliminarily, we observe, as did the trial court, that the primary purpose of the easement agreement was to give each party the right to cross each other's lands. In granting such right, the easement agreement provides that each party is entitled to "use, improve and maintain" the other's roads, but that each party is to do so at their own "sole cost, risk and expense."

Section 6 of the easement agreement does impose some maintenance and repair obligations on the parties to the easement. As relevant here, that section provides:

"Except as otherwise expressly provided herein, neither party shall have any obligation to maintain any roads for the benefit of the other. During any periods of road use each user shall maintain the road or roads in condition satisfactory for log hauling, and at the completion of any period of use shall repair all damage to and deterioration of the road *caused by the exercise of his rights hereunder*, shall clean up and remove all debris and shall leave the roads and ditches clear and generally in a condition as good as that existing at the time of the commencement of such use.

"In the event all or any portion of the road is used by more than one party at the same time, the cost of maintenance on *account of such use* shall be allocated between the parties in proportion to their respective use as determined by the volume of forest or other products hauled over the road."

(Emphases added.)

We understand the McNeelys to contend that under the first paragraph of section 6, regardless of the purpose for which Pistol used its own roads, Pistol was required as a general and ongoing matter, to maintain its roads in a condition suitable for log-hauling during any period of road use.

But that is not a plausible reading of that paragraph. Rather, considering the text in context, we understand, as the trial court did, that the first paragraph of

section 6 specifies a party's maintenance obligations when using the other's roads. That is, the obligation to "maintain the road or roads in condition satisfactory for log hauling" during "any periods of road use" is triggered by the "exercise of [a party's] rights" under the easement agreement—*e.g.*, driving on the other's roads—just as the repair and "clean up" obligations set forth in that paragraph are.

That understanding of the parties' obligations under the first paragraph of section 6 is supported by the granting language in sections 1 and 2, which indicates that the use of the other's roads under the easement agreement was intended to come at the "sole cost, risk, and expense" of the party exercising its rights under the agreement. Imposing onerous maintenance obligations in perpetuity—*i.e.*, requiring a party to maintain its own roads in a condition suitable for log-hauling regardless of how or why it is using such roads—as the McNeelys' construction of the first paragraph in section 6 would do, is in tension with that granting language, because it would require a party to maintain its roads for the other party's use, at the "cost, risk, and expense" of the party owning the roads.

With regard to the second paragraph in section 6 of the easement agreement, the McNeelys contend that "both Pistol and McNeely jointly used the Subject Road for years" and that Pistol "had the sole obligation to repair the Subject Road" under that paragraph because the "Pistol parties alone hauled forest products over the subject road." The difficulty with that argument is that the text of the paragraph the McNeelys rely upon indicates that the specified obligation to "maintain" the road during periods of joint use is only applicable in circumstances where the "cost of maintenance" is "on account of"—*i.e.* "because of"—such use. *See Webster's Third New Int'l Dictionary* 13 (unabridged ed 1981) (defining "on account of" as meaning, among other things, "by reason of **:** because of"). In this case, the trial court found that the damage to the bridge was not because of Pistol's use, but due to "deferred maintenance and natural causes such as the change of the river bank due to rain and erosion, and issues with culverts getting plugged from annual weather patterns."

Thus, in our view, the trial court did not err in determining that "the damage itself did not trigger anyone's obligation to repair."[11]

### III.   CONCLUSION

In light of the foregoing, we conclude that the trial court did not err. Accordingly, we affirm.

Affirmed.

---

[11] To the extent the McNeelys need to repair the bridge and Subject Roads to access their property, we note "Oregon's general rule that an easement holder has the right to do what is necessary to repair and maintain the easement." *Motes v. PacifiCorp*, 230 Or App 701, 708, 217 P3d 1072 (2009), *rev den*, 348 Or 13 (2010).

# APPENDIX

