***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Argued and submitted May 10, affirmed July 12, 2023

Barbie BREWER,
an individual,
*Plaintiff-Respondent,*

*v.*

Rene E. FRITZ
and Sharyn A. Fritz,
individually and as Trustees of
the Rene E. Fritz and Sharyn A. Fritz
Revocable Living Trust,
*Defendants-Appellants.*

Deschutes County Circuit Court
20CV46083; A177265

Bethany P. Flint, Judge.

W. Michael Gillette argued the cause for appellants. Also on the briefs were Sara Kobak, Craig G. Russillo and Schwabe, Williamson & Wyatt, P. C.

Michael H. McGean argued the cause for respondent. Also on the brief was Francis Hansen & Martin LLP.

Before Powers, Presiding Judge, and Hellman, Judge, and Armstrong, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

This appeal concerns a mutual easement agreement that grants the parties the right to use the landing and dock located between their properties ("the dock"). Defendants appeal a limited judgment entered in the case. In their two assignments of error, defendants argue that the trial court erred by denying defendants' motion for summary judgment on their counterclaims for breach of the easement agreement and declaratory relief and by granting plaintiff's cross-motion for summary judgment on those claims. For the following reasons, we affirm.

When reviewing cross-motions for summary judgment, "we view the record for each motion in the light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether either party is entitled to judgment as a matter of law." *O'Kain v. Landress*, 299 Or App 417, 419, 450 P3d 508 (2019).

In a combined argument, defendants argue that the trial court erred in concluding that the easement agreement allowed plaintiff's short-term renters to use the dock. Specifically, defendants contend that the agreement's text and the evidence concerning its formation demonstrate that the original owners intended to restrict the dock to "personal or private use by the owners and their social guests or invitees connected with such private use." Plaintiff responds that the easement agreement does not prohibit renters from using the dock. We agree with plaintiff.

"The interpretation of an express easement, like that of contracts and other written instruments, is a question of law for the court." *Kell v. Oppenlander*, 154 Or App 422, 426, 961 P2d 861 (1998). "[O]ur task is to discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner." *Bloomfield v. Weakland*, 224 Or App 433, 446-47, 199 P3d 318 (2008), *rev den*, 346 Or 115 (2009); *see also Senko v. Liu*, 316 Or App 795, 800, 503 P3d 494, *rev den*, 369 Or 785 (2022) ("The analysis closely parallels the analysis applied in the construction of a contract.").

Interpreting the agreement's words in the context of the entire document and the circumstances of its execution,

we conclude that the agreement is unambiguously silent as to any prohibition on short-term renters and does not prohibit plaintiff's renters from using the dock. *See Tressel v. Williams*, 291 Or App 215, 222, 420 P3d 31 (2018) (explaining that an easement holder's rights are limited by general reasonableness principles, express written restrictions, and extrinsic evidence showing that "the original parties to the easement intended some further restriction of the parties' rights" (quoting *Watson v. Banducci*, 158 Or App 223, 230, 973 P2d 395 (1999))).

We begin with "the language of the instrument itself and consider its text in the context of the document as a whole. If the text's meaning is unambiguous, the analysis ends, and we interpret the provision's meaning as a matter of law." *Bloomfield,* 224 Or App at 447. Here, defendants center their arguments on the term "private use" which appears in the second sentence of the disputed paragraph:

"Each Owner shall endeavor to cooperate with the other to respect each Owner's personal use of the landing and dock and to coordinate such use as to not inconvenience the other Owner as to excess noise and general raucous behavior by each Owner and their guests. It is agreed that the landing and dock will be for private use only and members of the general public shall be prohibited."

The plain meaning of "private" is "intended for or restricted to the use of a particular person or group or class of persons" while the relevant meaning of "public" is "the people as a whole[.]" *Webster's Third New Int'l Dictionary* 1804, 1836 (unabridged ed 2002); *see also Black's Law Dictionary* 1264 (8th ed 2004) (defining "public" as "[t]he people of a nation or community as a whole"). Thus, when read in context, the second sentence is best described as a purpose clause that limits the dock's use to particular classes of people and, conversely, excludes the community as a whole. Although the first sentence provides that each owner will respect the other's "personal use" and discourages certain conduct "by each Owner and their guests," the first sentence does not define "private use" in the second sentence.

Even when we consider a declaration from one of the original dock owners concerning the easement's formation

to determine whether the easement is ambiguous, that evidence indicates that the original owners did not discuss any prohibitions on their renters using the dock. *See Bloomfield*, 224 Or App at 447 ("To determine whether a provision in a document is ambiguous, the court can consider evidence of the circumstances surrounding its execution."). Although the declaration states that the original dock owners were concerned about another neighbor's short-term renters using the original dock owners' properties to access the river, they "never intended nor discussed the ability of either owner to have short-term renters use the dock or landing." Because the declaration demonstrates that the original owners did not manifest an intention to prohibit their own renters from using the dock when they formed the agreement, it fails to create any ambiguity as to the agreement's meaning. *See Ken Hood Construction v. Pacific Coast Construction*, 201 Or App 568, 578, 120 P3d 6 (2005), *adh'd to as modified on recons*, 203 Or App 768, 126 P3d 1254, *rev den*, 341 Or 366 (2006) (explaining that under the objective theory of contracts, "we examine the parties' objective manifestations of intent, as evidenced by their communications and acts").

Finally, even though the agreement expressly grants each owner the right to transfer and assign the easement, defendants contend that property owners cannot "circumvent" the agreement's use restrictions by transferring or assigning the easement to renters. We disagree. As explained above, the agreement does not restrict the dock's use to owners and their social guests and, importantly, the agreement created an appurtenant easement that runs with the land for the benefit of owners and their lessees. *See Restatement (Third) of Property (Servitudes)* § 5.2 (2000) ("Except as otherwise provided by the terms of the servitude *** an appurtenant benefit or burden runs to all subsequent owners and possessors of the benefited and burdened property, including a lessee ***."); *Restatement (First) of Property* § 487 comment h (1944) (explaining that a valid lease "entitles the lessee to the possession of the land and possession taken under the lease entitles the possessor to the benefit of the easements appurtenant to the land").

In view of the foregoing, we conclude that the trial court did not err in determining that there was no genuine

issue of material fact as to the meaning of the easement agreement and denying defendants' motion for summary judgment on their counterclaims. For the same reasons, we also conclude that the trial court did not err in granting summary judgment to plaintiff on those claims.

Affirmed.