22 December 26, 2024 No. 923

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Ambers L. THORNBURGH
and Bonnie L. Thornburgh,
*Plaintiffs-Respondents,*

*v.*

Awbrey CYRUS
and all other occupants,
*Defendant-Appellant.*

Deschutes County Circuit Court
23LT08785; A182255

Andrew C. Balyeat, Judge pro tempore.

Argued and submitted November 8, 2024.

William D. Bunch argued the cause and filed the opening brief for appellant. On the reply brief was Shannon McCabe.

Shenoa Payne argued the cause for respondents. Also on the brief were Shenoa Payne Attorney at Law PC, and Lonn TW Johnston and Kaiser Johnston Keathly LLP.

Before Tookey, Presiding Judge, Lagesen, Chief Judge, and Kamins, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

In this case we address a narrow question: whether a Circuit Court of the State of Oregon, in a nonresidential forcible entry and detainer action (FED), can prohibit a party from using land that is owned by the federal government when the party has been authorized by the Bureau of Land Management (BLM), in an exercise of its discretion, to use the land. Or, as articulated by defendant, "whether an FED is the appropriate legal mechanism for plaintiffs to attempt to divest defendant of her right to use BLM land." We conclude that the answer to those questions is "no."

In this FED action, defendant appeals a general judgment awarding plaintiffs "possession of the premises commonly known as the Cline Butte Allotment, Fryrear Butte Allotment and Desert Springs Allotment," *i.e.*, a judgment evicting defendant from those premises. Those premises, which we refer to in this opinion collectively as "the Allotment," consist of approximately 30,000 acres of land that are owned by the federal government and are "designated and managed for grazing of livestock," 43 CFR § 4100.0-5 (defining "allotment"), under the Taylor Grazing Act of 1934, 43 USC §§ 315 - 315n. Defendant has a valid permit that was issued by BLM to use the Allotment to graze her livestock. Nevertheless, the trial court granted possession of the Allotment to plaintiffs.

Because we conclude that the trial court did something that it cannot—prohibit defendant from using BLM land that she has been authorized by BLM to use—we reverse and remand.

At the outset, however, we note that our review in this case is complicated by two factors: First, although the trial court granted plaintiffs possession of the Allotment, it did not make any express findings of fact or explain its reasoning. Defendant asserts that this case "presented too many factual variables for a general ruling based on implicit findings to be appropriate," but she also appears to acknowledge that she did not preserve for appeal any argument related to the trial court's lack of express findings or reasoning. Nor does defendant endeavor to suggest that the

trial court's failure to make express findings in this case constituted "plain error." *State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) ("[W]e ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so.").[1]

Second, some of defendant's assignments of error are improper under ORAP 5.45(3), which "requires that 'each assignment of error shall identify precisely the legal, procedural, factual, or other *ruling* that is being challenged.'" *Justice and Crum*, 265 Or App 635, 638 n 1, 337 P3d 840 (2014) (quoting ORAP 5.45(3) (brackets omitted; emphasis in *Justice*)). For example, defendant's first assignment of error provides:

> "BLM has exclusive authority and jurisdiction over grazing permits for the allotments it manages; the trial court cannot circumvent BLM's administrative procedure and grant possession of property owned by the BLM to Plaintiff-Respondents when BLM, at its discretion and authority, has granted possession to Defendant-Appellant."[2]

As we have explained, "[c]ompliance with ORAP 5.45 is not a matter of mere form; it is crucial to our ability to review trial court rulings for error and to determine

---

[1] Defendant does argue, relying on *Jaimez v. Rosales*, 323 Or App 741, 525 P3d 92 (2023), that we should remand for further factual findings by the trial court to permit meaningful appellate review. But the discussion in *Jaimez* of this court remanding for further findings when necessary to permit meaningful appellate review was "tied to the nature of discretionary rulings." *Id.* at 744.

We do not understand the issue at bar to have involved discretionary rulings by the trial court, so this is not a case where remanding for additional findings or an explanation of the trial court's reasoning is appropriate under the reasoning of *Jaimez*.

[2] Defendant's other three assignments of error assert:

"The trial court erred by awarding Plaintiff-Respondents possession of the BLM grazing Allotments in a forcible entry and detainer ('FED') action pursuant to ORS 105.100 to 105.168 when Defendant-Appellant, not Plaintiff-Respondents, had a valid BLM grazing permit for the same Allotments, and said permit was unaffected by the trial court decision."

"The trial court erred when it held that Plaintiff-Respondents had a legal interest in the Allotments sufficient to maintain an FED action against Defendant-Appellant over the Allotments."

"Plaintiff-Respondents did not have authority to act as a landlord on behalf of property owned by the BLM. In the absence of a landlord/tenant relationship, the trial court erred by granting possession of the Allotments to Plaintiff-Respondents based on the Agreement between the parties."

whether the appellant's claims of error were preserved below." *Timber Town Living v. Dept. of Human Services*, 320 Or App 154, 158, 513 P3d 28, *rev den*, 370 Or 602 (2022) (internal quotation marks omitted).

In view of defendant's briefing, plaintiffs argue that we should treat defendant's assignments of error—with the exception of one assignment challenging the court's subject matter jurisdiction—as challenging the denial of a ORCP 54 B(2) motion to dismiss plaintiffs' claim. If we did so, we would "review the entire record to determine whether sufficient evidence was presented to establish a *prima facie* case on the applicable claim, viewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to plaintiff."[3] *Fowler v. Cooley*, 239 Or App 338, 344, 245 P3d 155 (2010) (internal quotation marks and brackets omitted). That is similar to the standard of review that we apply to a trial court's determinations following a bench trial, which is what we understand defendant to ask us to do in this case: "In reviewing a trial court's determinations following a bench trial, we review the trial court's explicit and implicit findings of fact for any evidence in the record to support them, and the legal consequences of those facts for legal error." *Pistol Resources, LLC v. McNeely*, 312 Or App 627, 629, 496 P3d 28 (2021).

Ultimately, here, the standard of review to which plaintiffs point and the standard of review we use to review a trial court's determinations following a bench trial are functionally equivalent: That is, we review the trial court's legal conclusion—*i.e.*, that plaintiffs were legally entitled

---

[3] As noted, defendant argues that the trial court lacked "subject matter jurisdiction."

Subject matter jurisdiction is the authority to deal with the general subject involved. *Greeninger v. Cromwell*, 127 Or App 435, 438, 873 P2d 377 (1994). "Circuit courts have subject matter jurisdiction over all actions unless a statute or rule of law divests them of jurisdiction." *Id.*

Although we conclude that the trial court erred in granting the relief that it did, we do not view that error as a lack of subject matter jurisdiction over this dispute, and we conclude that the trial court had subject matter jurisdiction. *See Gibson v. Pacific Summa Capital, Inc.*, 163 Or App 321, 324-25, 987 P2d 1240 (1999) (noting that "concurrent jurisdiction is presumed in the absence of exclusive federal jurisdiction" and that the circuit court had jurisdiction to determine "which of the two parties is entitled to exercise the limited rights that attach to valid unpatented mining claims" on federal land).

to be awarded possession of the Allotment—for legal error, viewing the evidence in the light most favorable to plaintiffs.

Applying that standard of review, we conclude that trial court erred in awarding possession of the Allotment to plaintiffs, because defendant had a valid permit issued by BLM authorizing her to graze her livestock on the Allotment. Consequently, we reverse and remand.

## I.   THE RELEVANT LAW

We begin with a brief overview of the Taylor Grazing Act and FED actions under Oregon law, before turning to the facts of this case and our analysis.

### A.   *The Taylor Grazing Act*

"Beginning in 1934, Congress has passed laws that govern grazing privileges on the public rangelands." *Corrigan v. Haaland*, 12 F4th 901, 905 (9th Cir 2021). In particular, the Taylor Grazing Act "authorizes the Secretary of the Interior to divide the public range-lands into grazing districts, to specify the amount of grazing permitted in each district, to issue leases or permits to graze livestock, and to charge reasonable fees for use of the land." *Id.* at 907 (internal quotation marks omitted). Under the Taylor Grazing Act, "individuals who control land within or near a grazing district may receive a 'preference' or 'priority' to stand first in line in applying for a grazing permit." *Id.* That is reflected in Section 3 of the Taylor Grazing Act, codified at 43 USC § 315b, which provides, in part:

> "The Secretary of the Interior is authorized to issue or cause to be issued permits to graze livestock on such grazing districts to such bona fide settlers, residents, and other stock owners as under his rules and regulations are entitled to participate in the use of the range, upon the payment annually of reasonable fees ***. *** *Preference shall be given in the issuance of grazing permits to those within or near a district who are landowners engaged in the livestock business, bona fide occupants or settlers, or owners of water or water rights, as may be necessary to permit the proper use of lands, water or water rights owned, occupied, or leased by them ***.* Such permits shall be for a period of not more than ten years, subject to the preference right of

the permittees to renewal in the discretion of the Secretary of the Interior."

(Emphasis added.)

Thus, a "grazing permit" issued by BLM is a "document that authorizes grazing use of the public lands under Section 3 of the [Taylor Grazing] Act." 43 CFR § 4100.0-5. A grazing permit further "specifies * * * the terms and conditions under which permittees make grazing use during the term of the permit." *Id.*

Applicable regulations set forth the process for transfer of a grazing "preference." 43 CFR § 4110.2-3. As part of that process, the party to whom the preference is transferred to must apply for and receive their own grazing permit from BLM in order to graze livestock on BLM land, and that BLM must determine that they are qualified to hold a permit. *See* 43 CFR § 4110.2-3. There is no similar federal regulation expressly allowing a party who holds a "grazing permit"—as distinct from a grazing preference—to transfer or lease that "grazing permit" to another party.

Ultimately, under the Taylor Grazing Act, the Secretary of the Interior is, in effect, the "the landlord of the public range," and the United States Congress has "basically made the grant of grazing privileges discretionary." *Pub. Lands Council v. Babbitt*, 529 US 728, 735, 120 S Ct 1815, 146 L Ed 2d 753 (2000). "The statutory scheme reflects a congressional decision to vest the agency with control over the public lands, including discretion to revoke use of those lands." *Corrigan*, 12 F4th at 912. Further, under applicable federal regulations, the Department of the Interior has "the power to modify, fail to renew, or cancel a permit or lease for various reasons." *Pub. Lands Council*, 529 US at 735. And federal courts have "underscored that the agency's discretion over public lands supersedes any preference right." *Corrigan*, 12 F4th at 912.

B.   *FED Actions under Oregon Law*

"An FED action is a statutory cause of action designed to allow quick resolution of a single issue between a landlord and tenant * * *: Who is entitled to possession of the property?" *Bank of New York Mellon v. Lash*, 303 Or App

456, 460, 463 P3d 614, *rev den*, 367 Or 217 (2020); *see also Duckworth v. Duckworth*, 327 Or App 219, 243, 534 P3d 1076 (2023) ("Under ORS 105.105 to 105.168, the issue that is to be decided in FED cases is entitlement to possession.").

Specifically, plaintiffs brought this action under ORS 105.110, which provides:

> "When a forcible entry is made upon any premises, or when an entry is made in a peaceable manner and possession is held by force, the person entitled to the premises may maintain in the county where the property is situated an action to recover the possession of the premises in the circuit court or before any justice of the peace of the county."

Under Oregon's FED statutes, before a tenant is forcibly evicted from a property, there must be "a judicial determination that [the tenant] is not legally entitled to possession." *Lindsey v. Normet*, 405 US 56, 72, 92 S Ct 862, 31 L Ed 2d 36 (1972).

## II. THE RELEVANT FACTS AND PROCEDURAL HISTORY

Consistent with our standard of review, we state the facts in the light most favorable to plaintiffs.

Plaintiffs own land that abuts the Allotment, which, as noted, consists of approximately 30,000 acres of land owned by the federal government. Historically, the property that plaintiffs own has had "preference" in applying for grazing permits to graze livestock on the Allotment, and previously plaintiffs have had a permit to graze their livestock on the Allotment.

Plaintiffs' most recent permit was issued by BLM for a term running from March 1, 2016 to February 28, 2026. The permit was signed by plaintiffs in April 2016, and a "BLM authorized officer" in May 2016. It provided plaintiffs with 100 percent of the grazing rights on the land during that period.

On March 3, 2020, plaintiffs and defendant entered into a written agreement that purported to "lease" plaintiffs' grazing permit for the Allotment to defendant. That agreement provided, in full:

"[Plaintiffs] are leasing the grazing permit at the [Allotment] area to [defendant] for a period of ten (10) years with an evaluation period at the end of three (3) years and an evaluation every year after that commencing April 1, 2020.

"The lessee will be responsible for the upkeep of fences, water and all charges due by the Bureau of Land Management.

"[Defendant] agrees to pay $1,500 to [plaintiffs] each year of the lease Payment due by April 1 of the current lease year."

Subsequently, one of the plaintiffs asked defendant to meet him in the BLM field office. In the field office, they met with the BLM field manager, and they "signed paperwork."[4] BLM then issued a grazing permit to defendant with effective dates of April 15, 2020 to April 14, 2030. That permit provides, in relevant part,

"UNDER 43 CFR PART 4100, THE BUREAU OF LAND MANAGEMENT (BLM) OFFERS YOU THIS GRAZING PERMIT BASED ON YOUR RECOGNIZED QUALIFICATIONS. UPON YOUR ACCEPTANCE OF THE TERMS AND CONDITIONS OF THIS GRAZING PERMIT AND PAYMENT OF GRAZING FEES WHEN DUE, *YOU ARE AUTHORIZED TO MAKE GRAZING USE OF LANDS UNDER THE JURISDICTION OF THE BLM THAT ARE COVERED BY THIS GRAZING PERMIT.* IF YOU HAVE QUESTIONS CONCERNING THIS GRAZING PERMIT, CONTACT YOUR LOCAL BLM OFFICE AT [phone number]."

(Capitalization in original; emphasis added.). The permit issued by BLM to defendant was signed by both defendant and a "BLM authorized officer" in April 2020. As does plaintiffs' permit as to plaintiffs, defendant's permit to graze her livestock on the Allotment provides defendant with 100 percent of the grazing rights on the Allotment during the time period covered by the grazing permit.

At this juncture, we pause to clarify a couple of points: First, we understand the parties to agree that there can be only one valid and operative grazing permit for the

---

[4] The record is silent as to the specific nature of that paperwork.

Allotment at a time.[5] We also understand the parties to agree that defendant, unlike plaintiffs, does not have "preference" for issuance of a grazing permit for the Allotment and, as a result, does not "stand first in line in applying for a grazing permit." *Corrigan*, 12 F4th at 905. And, as we understand the circumstances in this case, BLM would not have issued a grazing permit to defendant had plaintiffs not in some manner opted-out of the exercise of their preference under the Taylor Grazing Act; in that limited sense, plaintiffs' "consent" to defendant obtaining a permit from BLM was a required predicate for BLM issuing defendant's grazing permit to her.

In 2023, defendant failed to "pay rent" under the lease agreement with plaintiffs within ten days after the rent became due. Plaintiffs sent defendant a notice to quit and vacate the Allotment. After defendant refused, plaintiffs filed this FED action.

After trial, the trial court entered a judgment ruling in favor of plaintiffs and awarded plaintiffs "possession of the premises commonly known as" the Allotment.

## III.   ANALYSIS

Defendant asserts, among other arguments, that the trial court erred because "defendant has a valid grazing permit" and, thus, plaintiffs "cannot prevent her from using the allotment." That is because, as defendant sees it, the "state court does not and cannot control how public lands are managed" and so a "state circuit court cannot award

---

[5] We understand plaintiffs' position concerning whether there are one or two operative grazing permits for the Allotment to have evolved over the course of this appeal: In their briefing, plaintiffs appear to take the position that they currently "hold a valid grazing permit" for the Allotment, which is "still in effect and has never been terminated by the BLM," and that BLM also issued a grazing permit for the Allotment to defendant.

At oral argument, however, plaintiffs stated their view that "there's only one permit" and that "there are not two competing permits."

For her part, defendant argues that, by operation of federal law, plaintiffs' permit was no longer valid after defendant's permit was issued by BLM. She asserts that the trial court have must erroneously concluded that plaintiffs' permit remained "valid and active" at the time of their filing of the FED action.

In view of plaintiffs' position at oral argument and defendant's position, we understand the parties to agree that there is only one currently valid grazing permit for the Allotment.

possession of property the BLM owns to the Plaintiffs." Defendant also contends that if plaintiffs "were dissatisfied with BLM granting a permit to Defendant[], they should have exercised their administrative remedies through the BLM [administrative] appeal process."

Plaintiffs respond that there is not an administrative process to which they can avail themselves. That is because, as plaintiffs see it, "the Board repeatedly has held that the BLM has no jurisdiction to adjudicate private disputes involving the transfer of grazing rights as between private parties." Consequently, according to plaintiffs, they "could not seek any remedy from the BLM until such dispute is first resolved in state court" and, therefore, they "appropriately sought relief in state court" to obtain possession of the Allotment after defendant breached the lease by failing to pay rent.

Having considered the parties' arguments, we conclude that the trial court erred in awarding possession of the Allotment to plaintiffs. As set forth above, based on defendant's "recognized qualifications," BLM issued defendant a grazing permit authorizing defendant to "make grazing use of lands under the jurisdiction of the BLM that are covered by th[e] permit"—*i.e.*, the Allotment. *See* 43 CFR § 4100.0-5 (defining grazing permit as a document that "authorizes grazing use of the public lands under Section 3 of the [Taylor Grazing] Act"). Defendant's permit was issued by BLM, operating under the Secretary of the Interior, in BLM's capacity as, in effect, "the landlord of the public range," and was issued in an exercise of its discretion. *Pub. Lands Council*, 529 US at 735. There is no basis in this record to determine that that permit was not a legally valid permit giving defendant the grazing rights that it purported to give her.

The question in this FED proceeding is ultimately who is entitled to present possession of the Allotment, insofar as grazing rights are concerned. Under federal law, the valid grazing permit issued by BLM to defendant leads to a conclusion that, as a legal matter, defendant is entitled to use the Allotment to graze cattle. Consequently, the trial court erred in making a determination that defendant was not "legally entitled to possession," *Lindsey*, 405 US at 72,

of the Allotment, at least insofar as the right to graze cattle is concerned, *see Wolf v. Central Oregon & Pacific Railroad, Inc.*, 230 Or App 269, 275, 216 P3d 3160 (2009) ("Pursuant to the Supremacy Clause of the United States Constitution, the laws of the United States are 'the supreme Law of the Land; \*\*\* anything in the Constitution or Laws of any state to the contrary notwithstanding.'" (Quoting US Const, Art VI, cl 2; omission in *Wolf*)).

From the trial court's award of possession to plaintiffs, it seems apparent that the trial court determined that defendant breached its lease agreement with plaintiffs by failing to pay the requisite $1,500 to them. But it does not follow from defendant's breach of her lease with plaintiffs that the permit that *BLM* issued to defendant—in its discretion—to graze her cattle on the Allotment became invalid. Specifically, that conclusion does not follow from the text of the grazing permit itself, nor does it follow from any federal statute or regulation of which we are aware. Further, that conclusion regarding the continued validity of defendant's permit remains true even if BLM would not have issued the grazing permit to defendant absent plaintiffs' consent for BLM to do so.

In addition, we note that the result in this case would be the same even if plaintiffs and defendant each had a valid permit to use the Allotment. That is because, in sum and substance, when a party such as defendant in this case has authorization to use federal land pursuant to federal law, a FED proceeding cannot be used to oust them from that land.

But in reaching our conclusion in this case that the trial court erred, we observe that plaintiffs may be correct that their remedy for this dispute lies, at least as an initial matter, in the state courts rather than before BLM; indeed, the cases cited by plaintiffs indicate that they may have a remedy outside of BLM's administrative process to regain the exclusive right to graze their cattle on the Allotment. *See, e.g.*, *Reid v. Reid*, 269 F2d 923, 927 (10th Cir 1959) (it was within the equitable jurisdiction of the court to require appellants to execute a "relinquishment or other instrument" to "effectuate the transfer of [an] allotment" from appellants

to appellees, where administrative process for transfer required the "holder [of an existing allotment to] execute a relinquishment and the Forest Service then issue a new permit to the new permittee"). As one treatise observes, the "delineation between private contract rights and BLM managerial responsibility is unclear." George Cameron Coggins and Robert L. Glicksman, 3 *Public Natural Resources Law* 33:12 (2d ed 2024). That is, we do not suggest that plaintiffs are without a remedy for breach of the lease agreement. We conclude only that the trial court erred in issuing a ruling which we understand to have prohibited defendant from grazing cattle on land where she was expressly authorized to graze under federal law.

Reversed and remanded.